**Clarence Laverne KING, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–99–00017–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 27, 2000.

Opinion Overruling Rehearing April 6, 2000.

David R. Bires, Houston, for appellant.

William J. Delmore, Houston, for appellee.

Panel consists of Justices YATES, FROST, and DRAUGHN.*

## OPINION

KEM THOMPSON FROST, Justice.

Appellant, Clarence Laverne King, was indicted for the first degree felony offense of aggregate theft. *See* TEX. PENAL CODE ANN. §§ 31.03, 31.09 (Vernon 1994). After pleading not guilty, he was tried before a jury and found guilty. The jury assessed a $10,000 fine and sentenced Appellant to sixteen years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 12.32 (Vernon 1994). On appeal to this court, Appellant assigns twelve interrelated points of error, contending that he is entitled to an acquittal or new trial because (1) the evidence was legally and factually insufficient to prove beyond a reasonable doubt that he committed the offense and that the offense occurred within the applicable statute of limitations, (2) the trial court erred in denying his motion to sever his trial from the trial of his co-defendant, (3) the trial court's comments to the venire members regarding the presumption of innocence were erroneous and denied him due process of law and a fair trial, (4) the trial court erred in restricting his cross-examination of a witness, (5) the trial court erred in failing to instruct the jury on the statute of limitations and a lesser included offense of theft, and (6) the trial court erred in restricting his voir dire examination to the extent that it denied his intelligent exercise of peremptory challenges and denied him effective assistance of counsel. We affirm.

### BACKGROUND

Appellant and his long time business associate, Frank Ragan, operated a business known as Investors Portfolio International Corporation ("IPIC"). The purported objective of the business was to assist start-up business ventures in obtaining financing. Appellant and Ragan lured potential clients to enter into contracts by promising to prepare and present portfolios of their start-up businesses to wealthy investors who, in turn, were to provide the funds to finance the new ventures. The start-up ventures would pay IPIC substantial fees up front for obtaining the financing.

The following complainants paid IPIC substantial sums to obtain financing for their respective business ventures:

- Michael Mounce paid $93,475 to IPIC in order to obtain $6 million in financing for his new computer software business.
- Paul Buske, who was associated with Mounce, was also beginning a new business and paid IPIC $10,000 to obtain financing.
- David Heermans and Sami El Hage planned to launch a new optometry business. Heermans paid $164,780 to IPIC, with the expectation of receiving approximately $8 million in financing.
- James Nielson, who wanted to start a new oil and gas exploration business, paid IPIC $116,225 to obtain $40–50 million financing for his venture.

Despite receiving substantial fees, IPIC never contacted any investors on behalf of Mounce, Buske, Heermans, or Nielson, nor did the company ever obtain any financing from any investor to benefit any of their prospective business ventures. Appellant and Ragan used all of the money the complainants paid to IPIC to purchase luxury items for themselves and to pay other

---

* Senior Justice Joe L. Draughn sitting by assignment.

personal expenses. Of the $384,480 collected from the four complainants, Appellant spent approximately $275,513.57 solely on personal items and expenses, including personal credit card debt. Ragan spent the balance of the money on personal expenditures.

### STATUTE OF LIMITATIONS

We begin by addressing Appellant's third point of error in which he contends that the evidence is legally insufficient to prove beyond a reasonable doubt that the offense occurred within the applicable statute of limitations.

■ Appellant was indicted for the felony offense of aggregate theft. *See* TEX. PENAL CODE ANN. § 31.09 (Vernon 1994). The applicable statute of limitations provides that an indictment against an accused for this offense must be presented within five years from the date of the commission of the offense. *See* TEX.CODE CRIM. PROC. ANN. art. 12.01(4)(A) (Vernon Supp.1999). For the single offense of aggregate theft, the combination of multiple offenses of theft arising from one scheme or continuing course of conduct, the statute of limitations does not begin to run until the date of the commission of the final incident of theft. *See Graves v. State,* 795 S.W.2d 185, 186–87 (Tex.Crim.App. 1990); *Vincent v. State,* 945 S.W.2d 348, 350 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd); *Ex parte Howlett,* 900 S.W.2d 937, 938 (Tex.App.-Eastland 1995, pet. ref'd).

The record shows that Appellant completed the final incident of theft arising from the single scheme or continuing course of conduct during 1993. The felony indictment against him was presented on April 23, 1997, well within the five-year statute of limitations. Point of error three is overruled.

### LEGAL SUFFICIENCY OF THE EVIDENCE

In his second and third points of error, Appellant contends that the evidence is legally and factually insufficient to support his conviction.

■ In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *See Clewis v. State,* 922 S.W.2d 126, 133 (Tex. Crim.App.1996). We accord great deference "to the responsibility of the trier of fact [to fairly] resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). We presume that any conflicting inferences from the evidence were resolved by the jury in favor of the prosecution, and we defer to that resolution. *Id.* at n. 13 (quoting *Jackson,* 443 U.S. at 326, 99 S.Ct. at 2793). In our review, we determine only whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789) (emphasis in original).

The essential elements of the felony offense of aggregate theft are found in section 31.03(a) of the Texas Penal Code, which provides that a person commits an offense "if he unlawfully appropriates property with intent to the deprive the owner of the property." TEX. PENAL CODE ANN. § 31.03(a) (Vernon 1994). Appropriation of property is unlawful if it "is without the owner's effective consent." TEX. PENAL CODE ANN. § 31.03(b)(1) (Vernon 1994). Further, where "amounts are obtained [by theft] pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense." TEX. PENAL CODE ANN. § 31.09 (Vernon 1994). A theft offense is a felony of the first degree if the value of the property stolen is $200,000 or more. *See* TEX. PENAL CODE ANN. § 31.03(e)(7) (Vernon Supp.1999).

**14**

Employing our deferential standard of review, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant committed the offense alleged in his felony indictment. The State's evidence showed that Appellant targeted as prospective clients of IPIC individuals with start-up business ventures needing capitalization. In response to Appellant's marketing efforts, Mounce, Buske, Heermans, and Nielson, paid substantial fees to IPIC in order to obtain funding to finance their new businesses. Appellant and Ragan appropriated over $384,000 from these four complainants. The Penal Code provides that an appropriation is unlawful if it is without the owner's "effective consent." *See* Tex. Penal Code Ann. § 31.01(b)(1) (Vernon 1994). "Consent" is not effective if it is induced by deception. *See* Tex. Penal Code Ann. § 31.01(3)(A) (Vernon 1994). "Deception" is defined as "creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true." *See* Tex. Penal Code Ann. § 31.01(1)(A) (Vernon 1994). The record shows that Appellant deceived the four complainants by representing that their money would be used for the sole purpose of preparing portfolios of their start-up businesses to present to investors. It is clear from the record that Appellant never intended to prepare or present any portfolio to any investor; rather, he used $275,513.57 of the complainants' money for the sole purpose of paying his personal expenses and making purchases of items for his personal benefit. For example, Appellant spent $30,000 on dental implants for himself. He purchased expensive suits, clothing, boots, and hunting rifles for himself with funds the complainants paid to IPIC. Appellant also used a substantial part of the money he obtained from the complainants to pay his personal credit card account and a litany of other personal expenses, all while representing to the complainants that he was using their mon-

ey for the purpose of preparing portfolios to present to wealthy investors for the purpose of obtaining millions of dollars in financing for their fledgling businesses. By doing so, Appellant created a false impression of fact that affected the judgment of the four complainants.

Appellant also contends that the evidence is legally insufficient because he "partially performed" under three of the four complainants' contracts. He directs our attention to the testimony of his certified public accountant who "audited" the complaining witnesses' start-up ventures. The complainants, however, testified that they paid Appellant based upon his assurance that he would prepare portfolios and present them to investors for the purpose of obtaining financing for their business ventures. The complainants never received anything for the money they paid to Appellant. Assuming *arguendo* that Appellant's accountant performed audits for the actual purpose of appraising the value of the complainants' business ventures for financing purposes, none of the four complainants received any benefit from such audits. Thus, the accountant's audits, if any, do not constitute partial performance under the terms of IPIC's agreements with the four complainants. *See Ellis v. State*, 877 S.W.2d 380, 383 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd) (no partial performance found in finance scheme where the defendant paid a portion of an automobile note to the automobile dealer because the complainant did not benefit from such performance).

Appellant also contends that the evidence is legally insufficient to show that he committed the offense beyond a reasonable doubt under the law of parties. The law of the parties, as codified in the Penal Code, provides that a "person is criminally responsible for an offense committed by the conduct of another if ... acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the person

to commit the offense...." TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 1994). Appellant argues that while the State relied upon the law of parties to obtain a conviction, there was "little evidence of [his] direct contact with the complaining witnesses." Appellant contends that because he had only "brief conversations" with the complaining witnesses, the evidence is legally insufficient to support his conviction.

▪ Circumstantial evidence may be sufficient to show that a person is a party to an offense. *See Thomas v. State*, 915 S.W.2d 597, 599 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd). The circumstantial evidence must show that at the time of the offense, the parties were acting together, each contributing some part toward the execution of their common purpose. *See id.* at 599–600. In determining whether a defendant participated in an offense as a party, the court may examine the events occurring before, during, and after the commission of the offense. *See id.* at 600. Moreover, the cumulative force of all the incriminating circumstances may be sufficient to warrant a finding of guilt. *See id.*

The State's evidence showed that Appellant founded IPIC in early 1988, and that after becoming acquainted with Ragan in mid–1988, he acted as Ragan's mentor and consultant. Ragan and Appellant shared a close business relationship for many years and worked together to market IPIC to start-up ventures. While Ragan may have had more personal contact with the complainants, the evidence establishes that Appellant took affirmative steps to execute the scheme and that by his words and conduct he contributed to it. Appellant represented to the complainants that he had access to wealthy investors. On several occasions, Appellant personally assured the complainants that everything was in order and that financing from the investors would be forthcoming. Appellant converted for his personal use more than $275,500 of the approximate $384,000 the four complainants paid to IPIC. The evidence in this case was legally sufficient

to show beyond a reasonable doubt that Appellant, at a minimum, aided and encouraged Ragan in the commission of the offense.

After reviewing the record in the light most favorable to the verdict, we find that the evidence was sufficient to support Appellant's conviction. A rational juror could have found that Appellant had no intention of fulfilling his obligations under the agreements with the complainants and that his promises and assurances to the complainants were merely a ruse to accomplish theft by deception. *See, e.g., Ellis*, 877 S.W.2d at 383. The evidence is legally sufficient to support Appellant's conviction of aggregate theft beyond a reasonable doubt. *See Clewis*, 922 S.W.2d at 129, 133.

### FACTUAL SUFFICIENCY OF THE EVIDENCE

▪ In reviewing the factual sufficiency of the evidence, we "view all the evidence without the prism of 'in the light most favorable to the prosecution'" and will set aside the verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust." *Clewis*, 922 S.W.2d at 134. However, appellate courts "are not free to reweigh the evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable." *Id.* at 135. In other words, we will not substitute our judgment for that of the jury. *Id.* at 133. To do so would violate a defendant's right to trial by jury. *Id.* In order to find the evidence factually insufficient to support a verdict, we must conclude that the jury's finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Id.* at 135.

▪ We begin our factual sufficiency review by noting that while Appellant cross-examined the State's witnesses, he presented no evidence during the trial, and there was no conflicting evidence for the jury to resolve. Appellant contends that the State's evidence showing his limited personal contact with the complainants and

the evidence that showed he received the bulk of the money they paid to IPIC was insufficient to support his conviction. We disagree.

The State's evidence clearly showed that Appellant was intimately involved in the operation of IPIC during its entire duration and that he took affirmative steps to promote the "financing" services it purported to provide. The fact that his personal contact with the complaining witnesses was limited is inconsequential. The evidence plainly demonstrated that Appellant played a key role in the overall scheme. Appellant permitted Ragan to represent to the complainants that Appellant had access to wealthy investors who were interested in funding start-up ventures. Appellant received most of the money from the scheme yet did nothing by way of preparing portfolios or contacting investors.[1] Instead of using the fees the complainants paid to IPIC for the stated purposes, Appellant spent the money on his personal expenses. The evidence against Appellant was overwhelming and certainly factually sufficient to support the jury's verdict in this case. The jury's finding is not manifestly unjust and does not shock the conscience; nor does it clearly demonstrate bias. *See Clewis,* 922 S.W.2d at 134. Points of error one and two are overruled.

### MOTION FOR SEVERANCE

In points of error four, five and six, Appellant contends that the trial court erred in in failing to grant his motion to sever his trial from Ragan's trial. Appellant maintains that he was entitled to a separate trial because his defense and Ragan's defense were conflicting and antagonistic.

Article 36.09 of the Texas Code of Criminal Procedure, which governs the severance of cases based on separate indictments, outlines the relevant considerations in the severance analysis. The statute reads:

> Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the State; and provided further, that in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants.

TEX. CODE CRIM. PROC. ANN. art. 36.09 (Vernon 1981).

Absent evidence of prejudice to one defendant in a joint trial, or evidence that one of the defendants has a prior admissible conviction, a motion for severance is left to the trial court's discretion. *See Patterson v. State,* 783 S.W.2d 268, 270 (Tex.App.-Houston [14th Dist.] 1989, pet. ref'd); *see also Silva v. State,* 933 S.W.2d 715, 718 (Tex.App.-San Antonio 1996, no pet.). When an accused is not entitled to a severance as a matter of right, the denial of a severance motion by the trial court constitutes an abuse of discretion only when the movant satisfies the "heavy burden" of showing "clear prejudice." *See id.* Moreover, the mere allegation that prejudice will result is not evidence of, or a sufficient showing of,

---

1. There is testimony in the record suggesting that the reason Appellant never did anything on behalf of the four complainants was because the complaining witnesses' respective start-up ventures had no chance of success. It was within the province of the jury to reject such testimony. This is especially true in this case because there is also testimony in the record showing that Nielson's optometry start-up venture was ultimately sold to a corporation for $3,000,000 in cash, a seven-year royalty stream, and consulting contracts.

prejudice under article 36.09, particularly when the severance is discretionary with the trial judge. *See id.* If the motion to sever is not supported by evidence, its denial is not an abuse of discretion. *See Silva*, 933 S.W.2d at 718.

 Appellant submitted a timely motion for severance on the grounds that his defenses were inconsistent with the defenses alleged by Ragan and, therefore, a joint trial would create prejudice to his case. At the hearing on Appellant's motion to sever, Appellant's counsel advised the trial court that the two defendants' respective defensive theories would be antagonistic and inconsistent. This action, alone, was insufficient to warrant the relief requested. An accused cannot rely upon a general allegation in his severance motion that a co-defendant has a conflicting or inconsistent defense; rather, he must apprise the trial court of exactly what the inconsistent defenses will be. *See Silva*, 933 S.W.2d at 719. Appellant failed to meet this burden. The statements of both defendants' respective attorneys at the severance hearing were insufficient to demonstrate that prejudice would result if Appellant and Ragan were tried together in a single proceeding. Unconvinced of the merits of the motion, the trial court refused to order separate trials. At the conclusion of the severance hearing, the trial court stated:

Well, I've heard everything. Inconsistent defenses, of course, is a very fact-distending [sic] matter. I'm going to deny the Motions of Severance. Then, of course, if you are in trial, and I find that I was in error, the facts are such that a severance should have been granted, I can take care of it at that

time. At this time, Motions for Severance of both defendants are denied. They are ordered to trial together Monday morning.

 The subsequent proceedings proved to support the trial court's decision and to undermine Appellant's argument at the severance hearing. Although Appellant presented no evidence or testimony at trial, he undertook to establish through cross-examination of the State's witnesses that (1) IPIC did not prepare or present portfolios to investors because the complainants had breached their contracts with the company, and (2) *if* any misrepresentations were made to the complainants, they were made without Appellant's knowledge. Similarly, the core of Ragan's defense at trial was that the contracts with the complainants were valid and that the reason IPIC never obtained financing for them was because the complainants had breached their contracts.[2] There was no antagonistic or mutually exclusive defense evidence presented at trial to show that either Appellant or Ragan believed the other was guilty of the offense; rather, the record shows that their respective positions were entirely consistent. Both attempted to show the jury that the reason they failed to provide the financing services was because the complainants had failed to honor the terms of their agreements with IPIC. At most, the evidence demonstrated differing degrees of culpability between the defendants. Proof of this nature is not enough to warrant separate trials. *See Silva*, 933 S.W.2d at 719. To be entitled to a severance, the co-defendants' respective positions must be mutually exclusive in the sense that "the jury in

2. During oral argument, Appellant's counsel argued that during his testimony at trial, Ragan stated that he was deceived by Appellant the same as the complainants. Counsel argued that Ragan's testimony showed that his defense and Appellant's defense were mutually exclusive because Ragan was attempting to show that Appellant was solely responsible for the deceit. However, our review of the record does not support Appellant's counsel's argument. The record shows that Ragan testified that the failure of the complainants to obtain financing through IPIC was due to their respective breaches of contracts. There was no testimony by Ragan suggesting that he believed he was deceived by Appellant or that Appellant was solely responsible for the deceit which resulted in the theft of the complainants' money.

order to believe the core of one defense must necessarily disbelieve the core of the other." *Id.; see also Goode v. State*, 740 S.W.2d 453, 455 n. 2 (Tex.Crim.App.1987) (quoting *United States v. Lee*, 744 F.2d 1124, 1126 (5th Cir.1984) and *DeGrate v. State*, 518 S.W.2d 821, 822 (Tex.Crim.App. 1975)). To the extent that Appellant's and Ragan's respective positions differed, we find that the evidence showed at the most, only differing degrees of culpability. Thus, separate trials were not warranted.

We find that the joint trial resulted in no clear prejudice to Appellant's defense. Accordingly, the trial court did not abuse its discretion in denying Appellant's motion for severance. Points of error four, five, and six are overruled.

### TRIAL COURT'S COMMENTS TO VENIRE

■ In his seventh point of error, Appellant contends that the trial court's comments to the venire during voir dire regarding the presumption of innocence were erroneous and denied him due process of law and a fair trial.

During voir dire, the trial court made the following comments to the prospective jurors:

> That does bring us to then the next two Constitutional provisions, and that is that all persons who have been accused of a crime are presumed to be innocent. *Now, that doesn't mean they didn't do what they're on trial for, or what they have been accused of.* But, it means as of right now, each of them are presumed to be innocent, presumed to be not guilty. Everybody gets to start off with this presumption in the trial of a criminal case. If sometimes-as I say, this is a tedious part of the trial, and sometimes questions are asked of the panel that prospective jurors, not accustomed to the terms we use down here on a daily basis, and some lawyer might ask a question, well, if the State rested right now, you know, what would be your verdict? Well, obviously, it would be not guilty because you have heard no evi-

> dence to remove the presumption that they're innocent. This presumption stays with the accused person throughout the trial until such time as the State proves them guilty by credible evidence beyond a reasonable doubt.

(emphasis added).

Appellant argues that the italicized portion of the trial court's statement "essentially stripped the presumption of innocence from the Appellant" and "served to lessen the State's heavy burden of proof beyond a reasonable doubt." Appellant further contends that the comments "showed a lack of impartiality, and such expressions tainted the jury that was empanelled. [sic]." We disagree.

When faced with similar issues in the past, we have presumed that the jury followed the trial judge's instructions, as correctly set forth in the charge, and have declined to find a denial of a fair trial absent a contrary showing. For example, in *Moore v. State*, the appellant lodged a complaint similar to the one at issue here, concerning the trial court's remarks about the presumption of innocence. 983 S.W.2d 15, 19 (Tex.App.-Houston [14th Dist.] 1998, no pet.). In that case, the appellant claimed that the trial court's comment during voir dire examination that, "if [the defendant] were innocent we wouldn't be having a trial," was a misstatement of the law on the presumption of innocence. *See id.* Finding that the jury charge on the presumption of innocence tracked the language of section 2.01 of the Penal Code, and included language that the presumption alone was enough to acquit the defendant, we held that, absent evidence to the contrary, there is a presumption that the jury followed the instructions given by the trial court in its charge and not comments made by the judge. *See id.; see also Will v. State*, 794 S.W.2d 948, 950 (Tex.App.-Houston [1st Dist.] 1990, pet. ref'd) (trial court's comment to the jury that the "presumption of innocence is left to the jury" held not to constitute error where there

was no evidence that the jury failed to follow the instructions given to it in the jury charge).

We find that the comment made by the trial court in this case is even more innocuous than the comments made in *Moore* and *Will*. While it may have been better left unspoken, the trial court's comment merely stated the obvious. For if the presumption of innocence mandated by the United States Constitution meant that a defendant *did not* commit the offense for which he was being tried, regardless of the evidence presented, there would be no need for criminal prosecutions. Furthermore, shortly after the trial judge uttered the remark, the Appellant's counsel requested a clarification and the judge stated to the jury:

> When I was discussing the presumption of innocence a minute ago, let me make one other statement along that line, because I don't want to leave the wrong impression with y'all, and there was a thought that I might have said something that could leave the wrong impression with you. I said something to the effect that the presumption of innocence does not mean that the person on trial did not do what they are accused of. I mean it that way, but, also I'll add to that the fact that the presumption of innocence is so strong that you have to presume, of course, that they did not do it. And, it is only after the State has proved that they did do that which they are accused of that the presumption of innocence flies out the window and no longer obtains [sic].

Finally, the record shows that the trial court correctly instructed the jury on the presumption of innocence.[3] The language of the jury charge on the presumption of innocence tracked the language in section 2.01 of the Penal Code, and included language that this presumption alone was enough to acquit the defendant. *See* TEX. PENAL CODE ANN. § 2.01 (Vernon 1994). There is no evidence to overcome the presumption that the jury followed the instructions the trial judge gave in the charge and that the jury did not rely on the judge's prior comments. Point of error seven is overruled.

### LIMITATIONS ON CROSS-EXAMINATION AND ADMISSION OF EVIDENCE

In his eighth point of error, Appellant contends that the trial court erred in limiting his cross-examination of one of the complainants, Mounce, by denying the admission of Mounce's tax returns in evidence. Appellant contends that "one of the defenses at trial was breach of contract on the part of [Mounce]." He argues that the "excluded evidence would have provided valuable support to this theory because it showed Mounce had provided false information in inducing IPIC to enter into a contract with him."

The trial court has the discretion to exclude or admit evidence or testimony before the jury. An appellate court will not set aside the trial court's rulings absent a showing in the record that the trial court has abused that discretion. *See Montgomery v. State*, 810 S.W.2d 372, 379 (Tex.Crim.App.1990). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the trial court acted without reference to any guiding rules and principles. *See id.* at

---

**3.** Before deliberating, the trial court gave the jury the following charge on the presumption of innocence:

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

380. Another way of stating the test is whether the act was arbitrary or unreasonable. *See id.*

Although Appellant contends that the trial court unfairly restricted his cross-examination of Mounce by refusing to admit Mounce's tax returns in evidence, the record does not support this claim. Despite his assertion, Appellant did not attempt to admit Mounce's tax returns in evidence during his cross-examination of Mounce. Therefore, the trial court could not have limited Appellant's cross-examination of Mounce by excluding the tax returns. We will not find trial court error on an issue not put before the trial court to decide. *See* TEX. R .APP. P. 33.1(a)(1)(A).

During the subsequent cross-examination of his accountant, David Blomstrom, Appellant offered Mounce's tax returns in evidence. The State objected on the grounds that documents were not relevant to any issue in the case. The trial court agreed, ruling that the tax returns were "immaterial to any issue before the jury."

■■■■ Relevant evidence is evidence that has a tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* TEX.R. EVID. 401. If the trial court determines the evidence is irrelevant, the evidence is absolutely inadmissible and the trial court has no discretion to admit it. *See Webb v. State*, 991 S.W.2d 408, 418 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Questions of relevance should be left largely to the trial court and will not be reversed absent an abuse of discretion. *See id.* To be included in the expansive definition of relevant evidence, proffered evidence must have influence over a consequential fact. *See id.*

Appellant argues that the evidence was relevant to show that Mounce's earnings were less than what he reported in his contract with IPIC and, therefore, the tax returns would have shown that Mounce breached his contract with IPIC. We dis-

agree. Assuming *arguendo* that Mounce provided inaccurate or even false information to IPIC concerning his income, such evidence would not make the jury's determination of whether Appellant unlawfully appropriated Mounce's money by deceit more probable or less probable than it would be without the evidence. *See* TEX.R. EVID. 401; *see also* TEX. PENAL CODE ANN. § 31.03 (Vernon 1994). Evidence that would have had no influence over any consequential fact for the jury's resolution is not relevant. *See Webb*, 991 S.W.2d at 418.

We find no abuse of discretion in the trial court's refusal to admit Mounce's tax returns in evidence. Point of error eight is overruled.

### TRIAL COURT'S REFUSAL OF JURY INSTRUCTION ON THE STATUTE OF LIMITATIONS

In his ninth point of error, Appellant contends that the trial court erred in denying his request to instruct the jury on the defense of limitations.

■■■■ Before trial, a defendant may assert the statute of limitations defense by filing a motion to dismiss under article 27.08(2) of the Texas Code of Criminal Procedure. *See Proctor v. State*, 967 S.W.2d 840, 844 (Tex.Crim.App.1998). At trial, the defendant may assert the defense by requesting a jury instruction on limitations if there is some evidence before the jury, from any source, that the prosecution is time-barred. *See id.* If there is some such evidence, and the defendant requests a jury instruction on the limitations defense, then the State must prove beyond a reasonable doubt that the prosecution is not barred by limitations. *See id.* The defendant, however, may waive the limitations defense, either before trial or at trial. *See id.*

In this case, Appellant asserted the limitations issue during a pre-trial proceeding and again by requesting a jury instruction at trial. The trial court denied his pre-

trial motion to quash his indictment on the basis of limitations and refused his request to instruct the jury on limitations. Thus, Appellant raised the limitations issue before and after trial; however, he was not entitled to have the issue presented to the jury because there was no evidence to support such a charge.

As discussed above in connection with Appellant's third point of error, the record shows that the final incident of theft arising from the single scheme or continuing course of conduct was completed during 1993. The felony indictment against Appellant was presented in April 1997, well within the applicable five-year statute of limitations. To be entitled to a jury instruction on limitations, the issue must be supported by the evidence presented at trial. *See Howlett v. State*, 994 S.W.2d 663, 667 (Tex.Crim.App.1999). Appellant has failed to cite to any evidence in the record to support this issue and we find none. Thus, there was no fact issue for the jury to decide relating to limitations. Point of error nine is overruled.

## TRIAL COURT'S REFUSAL OF JURY INSTRUCTION ON LESSER INCLUDED OFFENSE

In his tenth point of error, Appellant contends that the trial court erred in denying his request to instruct the jury on the lesser included offense of theft.

Before an instruction on a lesser included offense is warranted, the defendant must establish that (1) the lesser included offense is included within the proof necessary to prove the offense charged, and (2) some evidence exists in the record to permit a jury to rationally find that if the defendant is guilty, he is guilty of only the lesser offense. *See Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim. App.1994). In making this determination, we review all of the evidence presented at trial and consider whether any evidence exists in the record that would permit a rational jury to find that the defendant is guilty of only a lesser included offense. *See id.* Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge. *See id.*

Appellant contends that he was entitled to a jury instruction on the lesser included offense of third degree or second degree felony theft because there was evidence showing that he may have been guilty of committing theft offenses against two of the complainants (Mounce and Buske) but not against the other two (Heermans and Nielson). Appellant argues that a conviction for committing a theft offense based upon the amount of money stolen from Mounce and Buske would have resulted in a conviction for a third degree or second degree felony and a shorter prison sentence, as opposed to his conviction for a first degree felony. *See* TEX. PENAL CODE ANN. § 31.03(e) (Vernon 1994). While Appellant avers that a "review of the entire record shows that more than a 'scintilla' of evidence existed to entitle [him] to a jury instruction on the lesser included offenses of second and/or third degree felony theft," he cites to none in the record. Our independent search of the record to find such evidence reveals that none exists. All of the State's evidence showed that Appellant participated in an ongoing scheme that duped all four complainants into paying money to Appellant and that Appellant used that money for his personal benefit while performing none of the promised services. Appellant, who took for himself the lion's share of the money, personally received approximately $275,500 of the $384,000 the complainants paid to IPIC over the course of the scheme. The evidence clearly showed that Appellant's share of the money was comprised of funds paid by each of the four complainants. There is not a scintilla of evidence in the record to support the notion that Appellant was entitled to a lesser included offense instruction. Point of error ten is overruled.

**22** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### RESTRICTIONS ON VOIR DIRE EXAMINATION

■ In his eleventh and twelfth points of error, Appellant contends that the trial court erred in restricting voir dire to the extent that it (1) denied him the intelligent exercise of peremptory challenges, and (2) denied him effective assistance of counsel.

■ A trial judge may impose reasonable restrictions on the exercise of voir dire examination. *See McCarter v. State,* 837 S.W.2d 117, 119 (Tex.Crim.App.1992). We review a trial judge's decision to limit voir dire under an abuse of discretion standard. *See Dinkins v. State,* 894 S.W.2d 330, 345 (Tex.Crim.App.1995). A trial judge abuses his discretion when he limits a proper question concerning a proper area of inquiry. *See id.* A trial judge may limit a defendant's voir dire under specific circumstances; that is, where a question commits a venire member to a specific set of facts, where the questions are duplicative or repetitious, where the venire member has already stated his position clearly and unequivocally, and where the questions are not in proper form. *See id.* A trial judge does not abuse his discretion by limiting voir dire examination when the defendant seeks to prolong the voir dire, nor when the issues the defendant seeks to explore are not proper voir dire questions. *See Carter,* 837 S.W.2d at 121. A question is not proper if its purpose is to discover prospective jurors' views on an issue not applicable to the case. *See id.*

Appellant contends that the trial court should have permitted him to question the venire members concerning the statute of limitations and that the trial court's ruling denying his request constituted an abuse of discretion. The record shows that following the conclusion of voir dire, counsel for Appellant's co-defendant (Ragan) asked the trial court for additional time to question the prospective jurors about their ability to follow the law concerning the statute of limitations. Appellant's counsel "adopted" this request. The trial court denied each request. Appellant contends that because he "raised" the issue of limitations, the issue was relevant to the case. We disagree.

Merely raising an issue before the trial court in a pre-trial proceeding does not make it relevant to the case. The trial court determined in its ruling on Appellant's pre-trial motion to quash, before voir dire commenced, that there was no evidence to support Appellant's theory that the statute of limitations barred the State's prosecution. Appellant has cited nothing in the record to show that the statute of limitations was a relevant issue for inquiry during voir dire. *See* TEX.R.APP. P. 38.1(h). To the contrary, the record shows that the State presented the indictment against Appellant within the statute of limitations. Therefore, the issue was neither applicable nor germane to Appellant's case. Because Appellant failed to show that the statute of limitations was a proper area of inquiry during voir dire, the trial court did not abuse its discretion in refusing to allow Appellant additional time to examine the prospective jurors. Accordingly, Appellant was not denied his intelligent exercise of peremptory challenges nor effective assistance of counsel in not being able to further examine the venire members. Points of error eleven and twelve are overruled.

The judgment is affirmed.

### SUPPLEMENTAL OPINION ON MOTION FOR REHEARING

■ In his motion for rehearing, Clarence Laverne King (Appellant) contends that this court failed to address his argument that the joint trial denied him due process of law and due course of law. He also contends that this court erred in holding that (1) he failed to make a sufficient showing of prejudice to warrant a severance, (2) there was no evidence in the record to support his request for a jury instruction on the statute of limitations, and (3) the statute of limitations was not a proper area of inquiry during voir dire.

We overrule his motion for rehearing in all respects and issue this supplemental opinion solely to address Appellant's contention that we neglected to address his due process and due course of law arguments in the original opinion.

In his motion for rehearing, Appellant complains that our opinion rejecting his argument that the trial court erred in denying his motion for severance "limits its analysis to the application of Article 36.09 of the Texas Code of Criminal Procedure." Appellant contends that "[s]eparate and apart from Article 36.09, [he] complained that the joint trial denied him a fair trial ... [and that] the Court failed to address whether the joint trial denied [him] due process of law and due course of law." In his original brief, the sum of Appellant's argument concerning due process and due course of law states:

> The denial of the motion for severance denied appellant due process and a fair trial. Denial of due process is constitutional error. See Brecheisen v. State, 958 S.W.2d 490 (Tex.App.-Fort Worth 1997).

While Appellant adequately presented his contention that the trial court abused its discretion by denying his motion for severance, he failed to adequately brief his contention concerning due process violations relative to his motion for severance.

 Texas Rule of Appellate Procedure 38.1(h) provides that the "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex.R.App. P. 38.1(h). Conclusory arguments which cite no authority present nothing for our review. See Vuong v. State, 830 S.W.2d 929, 940 (Tex.Crim.App. 1992); Atkins v. State, 919 S.W.2d 770, 774–75 (Tex.App.—Houston [14th Dist.] 1996, no pet.). Appellant presented this court with only an abstract assertion that his due process rights were violated, with no argument or analysis to support his contention and no citations to the record. Appellant did not address any of the gov-

erning legal principles nor did he apply any such principles to the facts of this case. Furthermore, the one case citation Appellant provided is inaccurate in that the case was reversed and remanded by the Texas Court of Criminal Appeals. See Brecheisen v. State, 958 S.W.2d 490 (Tex. App.-Fort Worth 1997), reversed and remanded, 4 S.W.3d 761 (Tex.Crim.App. 1999). Appellant's briefing on this issue falls short of the minimum required to present an issue for appellate review. Because Appellant failed to adequately brief the court on his due process and due course of law arguments, he waived error. See Greer v. State, 999 S.W.2d 484, 488 n. 3 (Tex.App.—Houston [14 th Dist.] 1999, pet. filed). Accordingly, we conclude that Appellant's due process and due course of law contentions present nothing for review.

Appellant's motion for rehearing is overruled.