Reversed and Remanded and Majority and Concurring Opinions filed May 18,
2006









 

Reversed and Remanded
and Majority and Concurring
Opinions filed May 18, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00325-CR

____________

 

GERBRILE DWAYNE
DAVIS,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 178th
District Court

Harris County, Texas

Trial Court Cause No. 993589

 



 

M A J O R I T Y   O P I N I O N

Appellant Gerbrile Dwayne Davis was
convicted of aggravated robbery and sentenced to twenty-seven years=
imprisonment.  In twelve issues,
appellant challenges his conviction. 
Because we conclude the trial court committed reversible error by
forcing appellant to wear handcuffs during the trial, we reverse and remand for
a new trial.

                                                  Background








On July 7, 2004,
Moserrat Rubio parked her van in front of a water station in a grocery store
parking lot and began filling her water jugs. 
She was then robbed at knife point, and her van was stolen.  A few hours later, appellant was arrested
after he was seen driving the stolen van. 
Police conducted a line-up, but Rubio was unable to identify appellant.

In a videotaped statement to police,
appellant admitted that he was present during the crime but claimed that his
friend Dustin Williams, not he, robbed Rubio. 
Appellant also admitted that the knife used in the robbery, which was
found in the van, was his knife but claimed he loaned it to Williams Ato take care of
some business.@ 
However, Rubio testified that she saw only one person when she was
robbed, and police could never locate Williams. 
At trial, Rubio identified appellant as her robber.  The State offered appellant=s videotaped
statement into evidence, which was played in full to the jury.  Appellant testified and again blamed the
robbery on Williams.  The jury
instructions authorized the jury to find appellant guilty either as a principal
or a party.  The jury found appellant
guilty.

On appeal, appellant raises twelve
issues.  The first three relate to the
whether the trial judge erred by ordering that appellant be handcuffed during a
portion of the trial.  In issues four
through eight, appellant complains the trial court erred in submitting an
instruction on the law of parties and challenges the legal and factual
sufficiency of the evidence to convict him either as a principal or a
party.  In issues nine through eleven,
appellant asserts the trial court erred in denying various motions relating to
Rubio=s inability to
identify him during the police line-up. 
In his final issue, appellant claims the trial court erred in allowing
the prosecutor to ask appellant=s opinion on the
credibility of some of the State=s witnesses.

                            Handcuffing Appellant During Trial








On the morning of
the third day of trial, the trial court judge, William Harmon, ordered that
appellant be handcuffed for the remainder of the trial.  Appellant=s counsel objected
that this would violate appellant=s due process
rights and interfere with effective attorney-client communication.  Counsel explained that he always instructed
his clients to communicate with him during trial by writing notes rather than
talking, which distracted him from the trial proceedings, and that appellant
would be unable to write without exposing his handcuffs to the jury.  Counsel also asked Judge Harmon to articulate
on the record a basis for ordering handcuffs because counsel had seen no
evidence that appellant presented a security risk.  Judge Harmon agreed that A[t]here=s been no specific
evidence presented to this Court that your client in particular has
demonstrated any kind of additional security risk.@  However, Judge Harmon explained that he had
learned through the news media that the previous day, an inmate in San
Francisco stabbed his counsel with a sharpened toothbrush.  Judge Harmon then announced a new security
policy:

The Court is of the opinion this is
going to be a general change in courtroom security, where people who are
accused of felony offenses who are facing, as in this case, a minimum of 15
years in prison to life in prison, are to be secured during trial.  Their hands are to be secured, [and] they=re not to have access to any
writing materials during trial.  

The Court considers those to be deadly weapons, and so this
is a general plan by the court to increase the security in the courtroom while
jurors are present.   

Judge Harmon ordered a bailiff to remove
from appellant=s hand a pen his attorney had given him to
write notes.  He further described
various measures he would take to ensure that jurors did not see the handcuffs,
including having appellant and others remain seated when jurors entered the
courtroom and removing the handcuffs before appellant testified.  Judge Harmon also suggested that appellant
and counsel could communicate by whispering or asking for a break to discuss
matters out loud if they did not want to whisper.  Counsel reiterated that he wished to
communicate with appellant in writing and suggested, as an alternative security
measure, that appellant be secured in leg shackles instead of handcuffs and be
seated several feet away from him, giving counsel time to react if appellant
became aggressive.  Judge Harmon refused
these requests and ordered that appellant be handcuffed.








Counsel renewed his objections at the
beginning of the punishment phase and requested that appellant be allowed to
write with State-provided crayons, reasoning that they surely could not be
considered deadly weapons, but Judge Harmon refused this accommodation as
well.  After the punishment phase
concluded but before the jury was dismissed, Judge Harmon asked jurors if they
had seen the handcuffs or noticed that the courtroom procedure of everyone
rising when the jury entered changed during the trial.  None of the jurors said they noticed the handcuffs
or the change in standing procedure.

As the United States Supreme Court has
noted, restraining a defendant in the courtroom implicates three fundamental
legal principles.  See Deck v.
Missouri, 125 S. Ct. 2007, 2013 (2005). 
First, our criminal process presumes the defendant is innocent until
proven guilty, and visibly restraining the defendant infringes upon this
presumption.  Id.  Second, a defendant has a constitutional
right to counsel to help secure a meaningful defense, and physical restraints
can interfere with the ability to communicate with counsel.  Id.  Third, the routine use of physical restraints
can undermine the dignity of the judicial process.  Id. 
Thus, as a general matter, a defendant has a right to be tried without
the use of physical restraints.  See
Culverhouse v. State, 755 S.W.2d 856, 859 (Tex. Crim. App. 1988) (AGenerally, a
defendant has a right to be tried without being handcuffed.@); see also
Cooks v. State, 844 S.W.2d 697, 722 (Tex. Crim. App. 1992) (noting that A[o]nly in rare
circumstances is shackling called for@).








However, the trial court has discretion to
order restraints if there is a showing of a manifest need or exceptional
circumstances, such as when a defendant poses a threat to himself or
others.  See Long v. State, 823
S.W.2d 259, 282 (Tex. Crim. App. 1991); Funari v. State, 70 S.W.3d 175,
176 (Tex. App.CSan Antonio 2001, pet. dism=d, untimely
filed).  Restraints cannot routinely be
ordered based on general security concerns or the type of crime charged but
must be assessed on a case-by-case basis. 
See Deck, 125 S. Ct. at 2011 (A[T]rial courts may
not shackle defendants routinely, but only if there is a particular reason to
do so.@); Long,
823 S.W.2d at 283 (holding that neither the nature of the crime charged nor
general concerns over courtroom security can justify restraints); Simms v.
State, 127 S.W.3d 924, 927 (Tex. App.CCorpus Christi
2004, pets. ref=d) (explaining that A[t]he decision to
use physical restraints must be made by the trial judge on a case-by-case basis@ (internal
quotation marks omitted)).  Judge Harmon
completely disregarded these principles. 
He explicitly acknowledged that appellant did not pose any additional
security risk, but he nonetheless ordered that appellant be handcuffed pursuant
to a new courtroom security policy.  Such
conduct is specifically prohibited both by the United States Supreme Court and
the Court of Criminal Appeals.  See
Deck, 125 S. Ct. at 2011; Long, 823 S.W.2d at 283.  While courtroom security is an increasingly
pressing concern, routinely restraining defendants is not a permissible manner
in which to address it.  We conclude that
Judge Harmon abused his discretion in ordering that appellant be handcuffed
without finding a particular reason specific to appellant to do so.  See Long, 823 S.W.2d at 283 (finding
abuse of discretion in ordering restraints based on general security concerns
and the nature of the crime as opposed to reasons specific to defendant); Grayson
v. State, No. 01-05-00615-CR, __ S.W.3d __, 2006 WL 853184, at *2 (Tex.
App.CHouston [1st
Dist.] Mar. 30, 2006, no pet. h.) (AWe hold that by
requiring appellant to be tried in shackles in the absence of any exceptional
circumstances, the trial judge abused his discretion.@).








Appellant claims that we should reverse
without a harm analysis because this error was structural.  The Supreme Court has held that a structural
error is a A>defect affecting
the framework within which the trial proceeds, rather than simply an error in
the trial process itself.=@  Johnson v. United States, 520 U.S.
461, 468 (1997) (quoting Arizona v. Fulminante, 499 U.S. 279, 310
(1991)).  The Court of Criminal Appeals
has explained that only federal constitutional errors can be structural and
then only if the Supreme Court has labeled them so.  See Gray v. State, 159 S.W.3d 95, 97
(Tex. Crim. App. 2005).  The Supreme
Court has most recently defined structural errors as:  the total deprivation of counsel at trial,
the lack of an impartial trial judge, the unlawful exclusion of members of the
defendant=s race from a grand jury, the denial of
the right to self-representation at trial, the denial of the right to a public
trial, and an instruction that erroneously lowers the State=s burden of proof
below the Abeyond a reasonable doubt@ standard.  Johnson v. State, 169 S.W.3d 223, 235
(Tex. Crim. App. 2005) (citing Johnson, 520 U.S. at 468B69)), cert.
denied, 126 S. Ct. 1355 (2006). 
Appellant argues that the interference with attorney-client
communication permeated the trial, resulting in structural error.  However, only an error resulting in the
complete denial of counsel is structural; anything less requires a harm
analysis.  See id. at 229B30.  Though we conclude that the handcuffs
interfered with appellant=s ability to communicate with his
attorney, that does not amount to a total deprivation of counsel.[1]  Thus, we hold that the trial court did not
commit structural error and that a harm analysis is appropriate.

Under Texas Rule of Appellate Procedure
44.2(a), a non-structural constitutional error 
must be reversed Aunless the court determines beyond a
reasonable doubt that the error did not contribute to the conviction or
punishment.@ 
This rule follows the harmless error standard set forth by the Supreme
Court in Chapman v. California, 386 U.S. 18, 24 (1967).  See Johnson, 169 S.W.3d at 228;
Potier v. State, 68 S.W.3d 657, 662 & n.26 (Tex. Crim. App.
2002).  Under this standard, it is the
State=s burden, as
beneficiary of the error, to prove the error is harmless beyond a reasonable
doubt.  See Deck, 125 S. Ct. at
2015B16 (quoting Chapman,
386 U.S. at 24); Wall v. State, 184 S.W.3d 730, 746 n.53 (Tex. Crim.
App. 2006); Williams v. State, 958 S.W.2d 186, 194 n.9 (Tex. Crim. App.
1997).  Unless the error could not
possibly have contributed to the conviction or punishment, we must
reverse.  See Wall, 184 S.W.3d at
746; Daniels v. State, 25 S.W.3d 893, 899 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).  Factors we
consider in conducting this analysis include the source and nature of the
error, the extent to which the State emphasized it, its probable collateral
implications, the weight the jury would probably give it, and whether declaring
it harmless would encourage its repetition with impunity.  See Harris v. State, 790 S.W.2d 568,
587 (Tex. Crim. App. 1989); Daniels, 25 S.W.3d at 899.








The State argues that the error was
harmless because the jury did not see the handcuffs.  The Supreme Court and Texas courts have
repeatedly emphasized the harm visible restraints cause to a defendant=s presumption of
innocence.  See, e.g., Deck,
125 S. Ct. at 2013; Long, 823 S.W.2d at 282; Shaw v. State, 846
S.W.2d 482, 486 (Tex. App.CHouston [14th
Dist.] 1993, pet. ref=d). 
Consequently, Texas courts have consistently found that no harm results
from restraining a defendant when the restraints were not visible.[2]  See, e.g., Canales v. State, 98
S.W.3d 690, 697B98 (Tex. Crim. App. 2003); Long,
823 S.W.2d at 283.

However, this case goes beyond what the
jury did or did not see.  As the Supreme
Court recognized in Deck, physical restraints can interfere with the
accused=s ability to
communicate with counsel.  125 S. Ct. at
2013; see also Simms, 127 S.W.3d at 927; Brown v. State,
877 S.W.2d 869, 871 (Tex. App.CSan Antonio 1994,
no pet.).  The State argues that the
record does not show appellant=s communication
with his attorney was actually undermined. 
We disagree.  The record does show
some interference with attorney-client communication.  Counsel had instructed appellant to
communicate with him in writing to avoid trial distraction and to avoid calling
the jury=s attention to
their communication.  Further, when Judge
Harmon ordered that appellant be handcuffed, he also instructed the bailiff to
remove from appellant=s hand the pen his attorney had given him
to write notes.  Accordingly, appellant=s communication
with his attorney was in fact hindered.[3]








The State stresses that Judge Harmon took
specific steps to leave open other methods of communication, such as whispering
or calling for breaks for discussions. 
Although these other methods were available, they were arguably less
effective than the method appellant and his attorney preferred.  A defendant has a general Aright to
unrestricted access to his lawyer for advice.@  Perry v. Leeke, 488 U.S. 272, 284
(1989); see also Illinois v. Allen, 397 U.S. 337, 344 (1970)
(explaining that Aone of the defendant=s primary
advantages of being present at trial [is] his ability to communicate with his
counsel@).  This access may be limited for important
reasons, such as to respond to a defendant=s disruptive
behavior or to address a security risk.  See
Allen, 397 U.S. at 343B44; see also
Morgan v. Bennett, 204 F.3d 360, 367 (2d Cir. 2000) (citing Perry
and other Supreme Court authority for the principle that Athe court should
not, absent an important need to protect a countervailing interest, restrict
the defendant=s ability to consult with his attorney@).  However, no such reasons existed here.  We are not convinced beyond a reasonable
doubt that unjustifiably handcuffing appellant did not impact effective
communication between appellant and his attorney and played no resulting role
in his conviction or punishment.

In addition to interfering with a
defendant=s ability to communicate with his
attorney, needlessly restraining a defendant can have significant collateral
implications.  As the United States
Supreme Court and other courts have recognized, restraining a defendant offends
the dignity and decorum of judicial proceedings.  See, e.g., Deck, 125 S. Ct. at
2013 (explaining that the courtroom=s formal dignity
includes respectful treatment of defendants, which routine shackling
undermines); Brown, 877 S.W.2d at 871 (A[P]hysical
restraints are an affront to the court and its proceedings.@).  Restraints can also embarrass and distract a
defendant, thereby undermining his ability to participate in his own
defense.  See, e.g., Deck,
125 S. Ct. at 2013 (noting that Ashackles >impos[e] physical
burdens, pains, and restraints=@ that A>ten[d] to confuse
and embarrass=@ a defendant,
thereby tending A>materially to
abridge and prejudicially affect his constitutional rights=@ (alterations in
original) (quoting People v. Harrington, 42 Cal. 165, 168 (1871)); United
States v. Durham, 287 F.3d 1297, 1304 (11th Cir. 2002) (AEven if the
physical restraints placed upon the defendant are not visible to the jury, they
still may . . . confuse the defendant, impair his ability to confer with
counsel, and significantly affect the trial strategy he chooses to follow.@ (internal
quotation marks omitted)); Brown, 877 S.W.2d at 871 (ALess overt, but
just as harmful, is the interference that a physical restraint causes with a
Defendant=s thought processes, the use of his mental
faculties, and his ability to communicate with counsel during trial.@).








We are also troubled by the nature and
source of this error.  This error
emanated directly from the trial court, which is significant to our
analysis.  See Ex parte Werne, 118
S.W.3d 833, 837 (Tex. App.CTexarkana 2003, no
pet.) (AThe source of the
error was evidently the court itself. 
That alone is of substantial importance.@); see also
Daniels, 25 S.W.3d at 899 (noting that Athe State, with
the approval of the court, was the source of the error@).  Judge Harmon ruled in the face of established
law, which appellant=s counsel called to his attention,
specifically noting that appellant posed no unique security risk to justify
restraints.  See Garcia v. State,
919 S.W.2d 370, 381 (Tex. Crim. App. 1996) (finding error harmful based in part
on risk of repetition, noting that prosecutor offered and trial judge admitted
evidence despite knowledge by both of deficiencies); cf. Werne, 118
S.W.3d at 837B38 (finding no harm, despite risk of
repetition, when nothing indicated trial judge intentionally chose to ignore
the law).  Texas law has held for at
least eighty years that restraining a defendant under these circumstances is
unconstitutional.  See Gray v. State,
99 Tex. Crim. 305, 320B22, 268 S.W. 941, 949B50 (1924).  Further, Judge Harmon appears to have ordered
restraints without a defendant-specific justification in at least three other
cases.  See Grayson, 2006 WL
853184, at *2.  We fear that declaring
this error harmless may encourage repetition of this blatantly unconstitutional
action.  See Kelly v. State, 903
S.W.2d 809, 812 (Tex. App.CDallas 1995, pet.
ref=d) (finding harm
based solely on need to prevent repetition of error that was committed at least
two other times in past year); see also Garcia, 919 S.W.2d at 381
(finding error harmful based in part on fear of encouraging repetition); Daniels,
25 S.W.3d at 899B900 (same).

Because we are not convinced beyond a
reasonable doubt that the handcuffs and the resulting limitations on
communication between appellant and his attorney did not contribute to
appellant=s conviction or punishment, we find the
error harmful in this case.  We sustain
appellant=s first three issues and reverse and
remand this case for a new trial.

                                              Legal Sufficiency








In appellant=s seventh issue,
he complains that the evidence is legally insufficient to support a conviction
for aggravated robbery under the law of parties.  We address this claim even though we have
sustained appellant=s first three issues and ordered a new
trial.  See Rankin v. State, 46
S.W.3d 899, 901 (Tex. Crim. App. 2001) (noting that A>[a]n appellate
court must always address challenges to the [legal] sufficiency of the evidence=@ (quoting McFarland
v. State, 930 S.W.2d 99, 100 (Tex. Crim. App. 1996) (alterations in
original)).[4]  In conducting a legal-sufficiency review of a
jury=s finding of
guilt, we view the evidence in the light most favorable to the verdict.  Wesbrook v. State, 29 S.W.3d 103, 111
(Tex. Crim. App. 2000).  We do not ask
whether we believe the evidence at trial established guilt beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 318B19 (1979). 
Rather, we determine only whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  Cardenas v. State, 30 S.W.3d 384, 389
(Tex. Crim. App. 2000).  In our review,
we accord great deference A>to the
responsibility of the trier of fact [fairly to] resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.=@  Clewis v. State, 922 S.W.2d 126, 133
(Tex. Crim. App. 1996) (quoting Jackson, 443 U.S. at 319).  We presume that any conflicting inferences
from the evidence were resolved by the jury in favor of the prosecution, and we
defer to that resolution.  Id. at
133 n.13.








The Texas Penal
Code provides that a defendant can be criminally responsible for the conduct of
anotherCthat is, a party
to the offenseCif the person acts with intent to promote
or assist in the commission of the offense and solicits, encourages, directs,
aids, or attempts to aid the other person committing the offense.  Tex.
Penal Code Ann. ' 7.02(a)(2) (Vernon 2003).  AEvidence is
sufficient to convict under the law of parties where the defendant is
physically present at the commission of the offense and encourages its
commission by words or other agreement.@  Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996).  Though mere presence does not automatically
make one a party to a crime, it is a circumstance tending to prove party status
and, when considered with other facts, may be sufficient to prove that the
defendant was a participant.  See
Avila v. State, 15 S.W.3d 568, 575 (Tex. App.CHouston [14th Dist.] 2000, no pet.); Diaz v. State, 902
S.W.2d 149, 152 (Tex.
App.CHouston [1st Dist.] 1995, no pet.).  Circumstantial evidence alone may be
sufficient to show the defendant was a party. 
King v. State, 17 S.W.3d 7, 15 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d).  In determining whether the defendant
participated as a party, we review the events occurring before, during, and
after the offense.  Id.  AMoreover, the
cumulative force of all the incriminating circumstances may be sufficient to
warrant a finding of guilt.@  Id.

In his videotaped
police statement, which the jury viewed, appellant claimed he ran into Williams
shortly before the robbery.  According to
appellant, he asked Williams for payment of eighty dollars he previously loaned
to Williams, but Williams said he did not have the money.  As they walked down the street, appellant
continued to demand payment from Williams. 
They approached a grocery store parking lot and saw a woman by a van with
its door open.  Williams pointed out the
woman and van to appellant, who in turn continued demanding repayment.  Williams then told appellant that he was
going Ato take care of
some business,@ which appellant said he understood meant
Williams intended to rob someone to obtain repayment money.  Williams asked to borrow the knife appellant
always carried, and appellant complied. 
Williams then robbed Rubio, and he and appellant left together in the
stolen van.








Appellant argues
that he was merely present during the commission of the robbery.  Despite his admission that he gave Williams
the knife, he nevertheless claims he did not know that Williams had the knife
on his person and intended to use it to commit an aggravated robbery.  However, viewing the evidence in the light
most favorable to the verdict, the jury could have determined that, after
repeatedly hassling Williams to repay his debt, appellant and Williams came upon
Rubio and her van in an empty parking lot, appellant gave Williams his knife to
Atake care of some
business,@ which he knew meant robbing someone to
repay him, and left with Williams in the stolen van.  From these facts, the jury could have
reasonably concluded that appellant intentionally assisted in the commission of
the robbery.  Thus, we conclude the
evidence is legally sufficient to convict appellant as a party to the offense,
and we overrule appellant=s seventh issue.

                                                   Conclusion

We find that the
trial court committed constitutional error by requiring that appellant be
handcuffed during the trial.  We also
find that the State has not proven this error was harmless beyond a reasonable
doubt.  Thus, we reverse the trial court=s judgment and
remand for a new trial.

 

 

/s/      Leslie Brock Yates

Justice

 

Judgment rendered and Majority and
Concurring Opinions filed May 18, 2006. (Hedges, C.J. concurring.)

Panel consists of
Chief Justice Hedges and Justices Yates and Guzman.

Publish C Tex. R. App. P. 47.2(b).











[1]  Additionally,
the Texas Supreme Court held that the unjustified handcuffing of a parent in a
termination proceeding was not structural error.  See In re K.R., 63 S.W.3d 796, 800
(Tex. 2001).  In reaching this
conclusion, the court reviewed cases from the U.S. Supreme Court and the Court
of Criminal Appeals and noted that Aneither
court has held that an error in shackling a criminal defendant requires a new
trial even if the error did not, beyond a reasonable doubt, contribute to the
defendant=s conviction or punishment.@  Id. at
799.





[2]   The State
also argues that as long as the restraints are not visible to the jury, a trial
court does not err in ordering their use, regardless of the circumstances.  We reject this argument.  Though many cases focus on the impact of the
jury seeing a defendant restrained, none have held that a trial court has
absolute authority to order restraints provided the jury does not see
them.  As we discuss below, the use of
restraints, whether visible or not, can violate a defendant=s constitutional rights.





[3]  Thus, this
case is distinguishable from other cases in which the record showed no
interference with attorney-client communication.  See, e.g., Brown, 877 S.W.2d at
872 (noting record contained no indication that defendant=s leg brace impeded communication with his attorney); State
v. Russ, 709 N.W.2d 483, 487 (Wis. Ct. App. 2005) (holding that deaf defendant
failed to show that handcuffs actually interfered with his ability to
communicate in sign language).





[4]  We need not address appellant=s fifth issue challenging the legal
sufficiency of the evidence to support his conviction as a principal because we
conclude the evidence is legally sufficient to support his guilt as a
party.  See Rabbani v. State, 847
S.W.2d 555, 558 (Tex. Crim. App. 1992) (AThe principle is well-established that when the jury
returns a general verdict and the evidence is sufficient to support a guilty
finding under any of the allegations submitted, the verdict will be upheld.@). 
We also need not consider appellant=s remaining issues because, unlike his legal sufficiency
challenge, success on these issues would not entitle appellant to acquittal
instead of remand, and thus resolving them is not Anecessary to final disposition of the
appeal.@ 
See Tex. R. App. P.
47.1.