Affirmed and Opinion filed January 13, 2005









Affirmed
and Opinion filed January 13, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00866-CR

____________

 

JULIO ALVAREZ
RAVEIRO ,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 212th
District Court

Galveston County, Texas

Trial Court Cause No. 02CR0401

 



 

O P I N I O N








Appellant Julio Alvarez Raveiro was
convicted by a jury of murder and, after pleading true to two enhancement
paragraphs, was sentenced to seventy-five years= confinement in
the Institutional Division of the Texas Department of Criminal Justice.  Asserting six points of error, appellant
contends: (1) the evidence is legally insufficient to sustain the conviction;
(2) the evidence is factually insufficient to sustain the conviction; (3) the
trial court erred by allowing his statements into evidence in violation of the
Vienna Convention; (4) the trial court erred by allowing into evidence a motel
registration card that failed to meet the predicate for the business records
exception to the hearsay rule; (5) he was denied effective assistance of
counsel; and (6) the trial court erred by allowing into evidence his partially
inaudible taped statement.  We affirm. 

Background

On February 25, 2002, police responded to
a call reporting a suspicious vehicle. 
The responding officer discovered the body of Albert Barnes lying in the
back seat with his pockets inside out. 
Barnes had several lacerations on his head but died as result of a
close-range gunshot wound to the back of his head.  

The investigation of the murder led to
several suspects.  Two of the suspects,
appellant and Delena Kent, voluntarily gave separate interviews to the police
after they had received Miranda warnings and waived their rights.  In his first interview, appellant denied any
involvement.  In his second interview,
appellant claimed two men, Charles Williams (ASnail@) and Tyrone
Thomas (AT@), had robbed him
and Kent and killed the complainant.  In
his third interview, appellant said he brought ASnail@ and AT@ from Wichita
Falls to Dickinson to carry out their plan to rob drug dealers.  However, appellant told investigators there
was no plan to rob or kill the deceased, but instead, the plan was to rob two
Hispanic drug dealers from New York.  He
said ASnail@ and AT@ were in a rival
gang from that of the victim and that the killing was gang-related.  He said he did not know they were in a rival
gang and that he did not participate.  

However, Kent, who spent the prior week
with appellant told a different version of the story.  She told investigators the victim was
appellant=s Anumber one@ target to
rob.  She witnessed appellant obtain two
pistols and some bullets before the murder. 
Kent agreed that appellant did not shoot or hit the victim.  She said ASnail@ and AT@ beat the victim
until he was unconscious and dragged him into the backseat of his own car.  Kent was forced to drive  the victim=s car with ASnail@ and AT.@  According to Kent, appellant got into his own
car and led her, ASnail,@ and AT@ to the field
where the victim was ultimately shot by ASnail.@  Kent testified that after the victim was
shot, appellant drove ASnail@ and AT@ back to his
house, told them to Akeep cool,@ and complimented
them on a Ajob well done.@   








Sufficiency of the Evidence    

In his first and second issues, appellant
contends the evidence is legally and factually insufficient  to prove he acted as a party, principal, or
conspirator in the robbery and murder. 
When reviewing the legal sufficiency of the evidence, we view all of the
evidence in a light most favorable to the prosecution to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Johnson v. State, 23 S.W.3d 1, 7
(Tex. Crim. App. 2000) (en banc).  We
consider all of the evidence admitted, both properly and improperly admitted,
as well as direct and circumstantial evidence. 
Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); Owens
v. State, 135 S.W.3d 302, 306 (Tex. App.CHouston [14th
Dist.] 2004, no pet.).  The jury is the
sole judge of the credibility of the witnesses, and chooses whether to believe
or disbelieve all or part of a witness=s testimony.  Moreno v. State, 755 S.W.2d 866, 867
(Tex. Crim. App. 1988).  Thus, if there
is evidence that establishes guilt beyond a reasonable doubt, and the jury
believes that evidence, we are not authorized to reverse the judgement on
sufficiency of the evidence grounds.  McGee
v. State, 923 S.W.2d 605, 608 (Tex. App.CHouston [1st
Dist.] 1995, no pet.) (citing Moreno, 755 S.W.2d at 867).  Additionally, when the trial court=s charge
authorizes conviction on several different theories, the verdict will be upheld
if the evidence is sufficient on any one of the theories.  Swearingen v. State, 101 S.W.3d 89, 95
(Tex. Crim. App. 2003).   








In conducting a factual sufficiency
review, we view all the evidence in a neutral light, without favoring either
party.  Johnson v. State, 23
S.W.3d 1, 6B7 (Tex. Crim. App. 2000).  We will set aside the verdict only if: (1)
the evidence supporting the verdict, considered by itself, is too weak to
support the finding of guilt beyond a reasonable doubt, or (2) contrary
evidence, if present, is strong enough that the beyond-a-reasonable-doubt
standard could not have been met.  Zuniga v. State, 144 S.W.3d 477, 484 (Tex.
Crim. App. 2004); Roy v. State, Nos. 14-02-00909-CR, 14-02-00910-CR,
2004 WL 1607489, at *4 (Tex. App.CHouston [14th
Dist.] July 20, 2004, no pet.).  When
reviewing the evidence, we must give appropriate deference to the jury findings
in order to avoid intruding on the fact finder=s role as the sole
judge of the weight and credibility of the evidence.  Johnson, 23 S.W.3d at 7.  Therefore, unless the record reveals a
different result is appropriate, we Amust defer to the
jury=s determination
concerning what weight to give contradictory testimonial evidence, because
resolution often turns on evaluation of credibility and demeanor.@  Id. at 8.

To establish the offense of murder, the
State must prove the defendant (1) intentionally or knowingly caused the death
of the individual or (2) intended to cause serious bodily injury and committed
an act clearly dangerous to human life that caused the death of an
individual.  See Tex. Pen. Code Ann. ' 19.02(b)(1)B(2) (Vernon
2003).  A person is criminally
responsible for an offense committed by the conduct of another if, acting with
intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the
offense.  Tex. Pen. Code Ann. ' 7.02(a)(2)
(Vernon 2003).  A person commits
conspiracy if, with intent that a felony be committed, he agrees with one or
more persons that they or one or more of them engage in conduct that would
constitute the offense.  Tex. Pen. Code Ann. ' 15.02(a)(1)
(Vernon 2003).  In this case, the jury
returned a general verdict finding appellant guilty of murder.  It is well-settled that when a general
verdict of guilt is returned, and the evidence is sufficient to support a
finding of guilt under any of the paragraph allegations submitted, the verdict
will be upheld.  McDuff v. State,
939 S.W.2d 607, 615 (Tex. Crim. App. 1997); Fuller v. State, 827 S.W.2d
919, 931 (Tex. Crim. App. 1992).      








Viewing all of the evidence, Delena Kent
was present in Wichita Falls when appellant planned and conspired with ASnail@ and AT@ to go back to
Dickinson and rob drug dealers. 
Thereafter, she accompanied appellant and the two men back to
Dickinson.  In Dickinson, before the
murder, appellant went to a house and picked up a silver gun, acquired a .22
caliber pistol from Kent=s brother, and purchased bullets.  A few nights later, after deciding the
complainant was the Anumber one@ target for the
group to rob, appellant called him and ordered an ounce of crack cocaine to be
delivered to his house.  When the
complainant arrived, appellant was waiting in the front yard and ASnail@ and AT@ were hiding
behind an abandoned car.  The complainant
gave appellant the cocaine.  Appellant
believed it was not an ounce, but gave Kent a piece to sample.  When she returned, Kent saw ASnail@ and AT,@ who were both
armed with handguns, beating up the complainant in the front yard, checking his
pockets, and telling him they knew he had more money.  Kent testified appellant never laid a hand on
the complainant, but instead, watched without attempting to stop the
beating.  However, her story conflicts as
to whether appellant was armed or not. 
After beating the complainant unconscious, ASnail@ and AT@ dragged the
victim to his own car and placed him in the back seat.  ASnail@ and AT@ got in the
complainant=s car and forced Kent to drive.  She testified appellant drove in his own car
and led them to the edge of a field not far from where he had obtained the
silver handgun.  Kent testified appellant
pointed and turned his blinker on towards the field when ASnail@ and AT@ told her to turn
in.  She did, then stopped the car,
jumped out, and ran to appellant=s car, which was
waiting at the entrance.  A short time
later she heard a gun shot.[1]  ASnail@ and AT@ ran to and
entered appellant=s car. 
Appellant told them Ajob well done@ and Akeep cool,@ and then drove
back to his house.  

Upon their arrival at appellant=s house, appellant
poured transmission fluid and soap  on
the driveway to clean off the victim=s blood.[2]  Appellant told Kent to help him and to stay
close or he would kill her and her brother, the same way he did the
complainant.  Thereafter, appellant
transported ASnail@ and AT@ to a motel.  The next day, Kent and appellant drove around
town because appellant wanted to find out what people were saying about the
complainant=s death. 

Investigators searched a local motel room
registered to appellant.  There,
investigators collected a comforter, pillow case, and shirt, all of which had
blood stains.  However, none of the items
were tested.   








During the investigation, appellant gave
three interviews concerning his knowledge of the murder.  In his first interview, appellant told
investigators he had nothing to do with the murder.  In his second interview, appellant told
investigators that ASnail@ and AT@ robbed him and
Kent and murdered the complainant. 
During the third interview, appellant told investigators that he brought
ASnail@ and AT@ to Dickinson from
Wichita Falls because they had a plan to rob drug dealers, but not the
complainant .[3]  He also claimed that after the beating, ASnail@ and AT@ left with the
victim while he stayed at his house. 
However, when investigators falsely told him his tire tracks were found
at the crime scene, he changed his story and said he drove around looking for
them and found them at the field. 
However, at this point in the investigation, investigators had not
disclosed to appellant or anyone else the exact location of the murder.   

During his third interview, appellant
claimed he was not involved in the murder and that it was gang related.  Appellant said ASnail@ and AT@ were ACrips@ and rivals to
complainant=s gang, the ABloods.@  Kent also testified that at some point,
appellant told her he lived in ACrip territory.@  The complainant was wearing red on the night
of his murder and ASnail@ and AT@ were wearing
blue.[4]  Appellant said he didn=t know ASnail@ and AT@ were Crips before
the complainant arrived with the drugs.      









At trial, appellant attacked Kent=s
credibility.  When Kent testified, she
was currently serving a sentence for an unrelated crime, had previous
convictions, was a prostitute, and drug addict. 
Kent smoked crack cocaine minutes before the complainant was beaten and
killed.  Appellant impeached Kent about
differences in details between her testimony and previous statements she had
made to investigators.[5]  Also, while some of Kent=s testimony was
consistent with the evidence and appellant=s statements to
investigators, some of her statements could not be verified.  Kent testified the conspirators cleaned blood
off of themselves in appellant=s sink; however, a
P-trap test detected no blood in appellant=s sink.  Similarly, Kent testified ASnail@ and AT@ had blood on them
when they entered appellant=s car after ASnail@ shot the victim,
but no blood was found on the rear passenger seat or in appellant=s vehicle.              

The evidence established that appellant
entered into an agreement in Wichita Falls with AT@ and ASnail@ to rob drug
dealers in Dickinson, and pursuant to that agreement, transported AT@ and ASnail@ to
Dickinson.  Appellant called the victim,
a drug dealer, to his house, and watched as AT@ and ASnail@ assaulted
him.  Appellant led AT@ and ASnail@ to the field
where the victim was murdered by a gunshot. 
The handguns used by AT@ and ASnail@ during the
offense were obtained by appellant days before the offense.  After the murder, AT@ and ASnail@ ran to and
entered appellant=s vehicle. 
Appellant told them Ajob well done@ and transported
them to his house where he attempted to remove the victim=s blood from his
driveway.  Viewing this evidence in a
light most favorable to the verdict, we conclude a rational trier of fact could
have found beyond a reasonable doubt the essential elements necessary to find that
appellant was criminally responsible under Texas Penal Code ' 7.02(a)(2) for
the murder of Albert Barnes from the testimony describing appellant=s acts of
soliciting, encouraging, directing, aiding, attempting to aid, and acting with
intent to promote or assist the commission of the murder.  See Cordova v. State, 698 S.W.2d 107,
111B12 (Tex. Crim.
App. 1985). Viewing the same evidence in a neutral light, we conclude the
evidence is not too weak to support the finding of guilt beyond a reasonable
doubt, and that the contrary evidence was not strong enough to conclude the
reasonable doubt standard could not be met.[6]  The evidence is therefore legally and
factually sufficient to support the guilty verdict.  Appellant=s issues one and
two are overruled.          

 








Vienna Convention

In his third issue, appellant argues the
trial court erred by allowing into evidence statements taken in violation of
the Vienna Convention.  Specifically, he
argues error because he had not been advised prior to making his statements
that he had a right to contact and consult with the Cuban consulate.  At trial, outside the jury=s presence,
appellant testified he was born in Cuba, had never been granted citizenship by
the United States, and was not a naturalized citizen of any country except
Cuba.  However, he never told the
detective he was not a United States citizen. 


In his brief, appellant acknowledges the
holding in Rocha v. State.  In Rocha,
the Court of Criminal Appeals held that treaties do not constitute laws for
purposes of Article 38.23,[7]
Texas Code of Criminal Procedure.  16
S.W.3d 1 (Tex. Crim. App. 2000). 
However, he states that constitutional issues of due process, equal
protection and due course of law under the federal and state constitutions have
not been fully litigated.  Appellant does
not develop this argument nor present any authority in support of his
contention.  See Tex. R. App. P. 38.1(h) (stating A[t]he brief must
contain a clear and concise argument for the contentions made, with appropriate
citations to authorities@); Rhoades v. State, 934 S.W.2d
113, 119 (Tex. Crim. App. 1996) (holding appellant must cite specific legal
authority to support argument); King v. State, 17 S.W.3d 7, 23 (Tex.
App.CHouston [14th
Dist.] 2000, pet. ref=d) (stating that without supporting
citations to relevant legal authority and application of that authority to the
facts, conclusory argument is insufficient to preserve error).  Failure to cite authority presents nothing
for review.  McFarland v. State,
928 S.W.2d 482, 512 (Tex. Crim. App. 1996), cert denied, 519 U.S. 1119
(1997).  Therefore, appellant=s third issue is
overruled.  

 








Business Records Exception        

In his fourth issue, appellant argues the
trial court erroneously admitted a motel registration card bearing appellant=s name, address,
make of car, and licence plate number. 
The motel registration card was dated February 28, 2002, and indicated
two guests were in the party.  During the
investigation, the motel room registered to appellant was searched.  The search revealed a gun hidden under the
carpet that possibly belonged to the complainant.  When the State attempted to admit the motel
registration card, appellant objected on the stated grounds that it was hearsay
and the State failed to establish a proper predicate for the admission of the
evidence as a business record.[8]  Specifically, appellant argued the State
failed to establish that the form was made by someone with personal knowledge,
such as a motel employee or representative.        

We review the trial court=s decision to
admit or exclude evidence under an abuse of discretion standard.  Bingham v. State, 987 S.W.2d 54, 57
(Tex. Crim. App. 1999); King v. State, 953 S.W.2d 266, 269 (Tex. Crim.
App. 1997).  The trial court abuses its
discretion if it acts without reference to any guiding rules or
principles.  Montgomery v. State,
810 S.W.2d 372, 380 (Tex. Crim. App. 1990). 









In King v. State, the Court of
Criminal Appeals held a motel receipt met the requirements of Texas Rule of
Evidence 803(6) even though the owner could not remember specifically who wrote
appellant=s name on the registration card.  953 S.W.2d 266, 270 (Tex. Crim. App.
1997).  Appellant acknowledges this
holding but attempts to distinguish one fact. 
In King, the top portion of the form was filled out by the guest
and the bottom portion by a motel employee. 
In this case, appellant contends that all of the information was placed
on the card by appellant, or someone purporting to be him.  He argues that because no entries were made
by a motel employee, it failed to meet all the requirements of the exception.  Contrary to appellant=s version of the
testimony in this case, the motel owner testified that a clerk adds other
information to the card after a guest fills it out.[9]  Therefore, King is not distinguishable
as appellant contends.  The motel owner
testified (1) he owned the motel; (2) the registration cards are kept in the
regular course of business; and (3) the forms were filled out in part by the
motel guest and in part by an employee of the motel.  This testimony supports the trial court=s determination
that the hotel registration form meets the requirements of Rule 803(6).  See King, 953 S.W.2d at 270.  Appellant=s fourth issue is
overruled. 

Ineffective Assistance of Counsel              

In his fifth issue, appellant contends he
was denied effective assistance of counsel because his attorney (1) failed to
object to the absence of Miranda warnings on appellant=s  tape recorded statement; (2) failed to
preserve error when the State introduced a .22 caliber pistol and photos of it;
and (3) failed to preserve error during voir dire when the State asked
questions about enhanced punishment.  








The United States Supreme Court has
established a two-prong test to determine whether counsel was ineffective.  Strickland v. Washington, 466 U.S. 668,
687 (1984).  Appellant must prove (1) his
trial counsel=s representation was deficient and (2) his
trial counsel=s deficient performance was so serious
that it prejudiced his defense.  Id.
at 686B87; Bone v.
State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).  To establish deficient performance, appellant
must prove by a preponderance of the evidence that counsel=s representation
fell below the objective standard of prevailing professional norms, and there
is a reasonable probability that, but for counsel=s deficiency, the
result of the proceeding would have been different.  Id. 
Appellant must identify specific acts or omissions of counsel that
constitute the alleged ineffective assistance and affirmatively prove that they
fell below the professional norm for reasonableness.  McFarland v. State, 928 S.W.2d 482, 500
(Tex. Crim. App. 1996) overruled on other grounds by, Mosley v. State,
983 S.W.2d 249, 263 (Tex. Crim. App. 1998) (citing Strickland, 466 U.S.
at 690).  The alleged ineffectiveness
must be firmly founded in the record.  Bone,
77 S.W.3d at 835.  If appellant fails to
satisfy either prong of the test, we do not need to consider the remaining
prong.  Strickland, 466 U.S. at
687. 

Judicial scrutiny of counsel=s performance must
be highly deferential, and we indulge a strong presumption that counsel was
effective.  Id at 689; Jackson
v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  We presume counsel=s actions were
reasonably professional and motivated by sound trial strategy.  Strickland, 466 U.S. at 689 (stating that
a fair assessment of attorney performance requires every effort to eliminate
the distorting effects of hindsight  and
to evaluate the conduct from counsel=s perspective at
the time of trial).  Appellant must
overcome this presumption by illustrating why trial counsel did what he did.  Belcher v. State, 93 S.W.3d 593, 595 (Tex.
App.CHouston [14th
Dist.] 2002, pet. dism=d). When evaluating an allegation of
ineffective assistance, the appellate court looks to the totality of the
representation and the particular circumstances of each case.  Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999).  The fact that another
attorney may have acted in a different manner will not be sufficient to prove
ineffective assistance, and an error in trial strategy will be considered
inadequate only if counsel=s actions lack any
plausible basis.  Dickerson v. State,
87 S.W.3d 632, 637 (Tex. App.CSan Antonio 2002,
no pet.).  








Generally, the record on direct appeal is
not sufficient to establish a claim of ineffective assistance of counsel
because a silent record cannot rebut the presumption that counsel=s performance was
based on sound or reasonable trial strategy.  Mitchell v. State, 68 S.W.3d 640, 642
(Tex. Crim. App. 2002).  A reviewing
court should not second-guess trial counsel=s strategy in
hindsight; thus, an affidavit supporting a motion for new trial can be critical
to the success of a claim for ineffective assistance.  Storr v. State, 126 S.W.3d 647, 651 (Tex.
App.CHouston [14th
Dist.] 2004, no pet.); Stults v. State, 23 S.W.3d 198, 208B09 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d). 
In the absence of a record explaining trial counsel=s actions, a
reviewing court most likely cannot conclude trial counsel=s performance fell
below an objective standard of reasonableness unless the conduct was so outrageous
that no competent attorney would have engaged in it.  Garcia v. State, 57 S.W.3d 436, 440
(Tex. Crim. App. 2001); Storr, 126 S.W.3d at 650B51.      

Appellant filed a motion for a new trial
asserting the verdict in the cause is contrary to the law and the evidence and
is legally and factually insufficient, but the motion did not include an
affidavit from his attorney.  The motion
was subsequently denied.  Thus, the
record contains no evidence of the reasoning behind trial counsel=s
performance.  Therefore, we cannot
conclude that counsel=s performance was deficient.  See Jackson, 877 S.W.2d at 771B72; Thompson,
9 S.W.3d at 814 (holding that when the record provides no explanation as to the
motivation behind trial counsel=s actions, an
appellate court should be hesitant to declare ineffective assistance of
counsel).  The appellate court is not
required to speculate on the reasons behind trial counsel=s actions when
confronted with a silent record.  Jackson, 877 S.W.2d at 771.  Appellant 
fails to provide this court with any evidence rebutting the presumption
that counsel was providing effective assistance.  Thus, appellant has not satisfied his burden
on appeal to rebut the presumption that counsel=s actions were
reasonably professional and motivated by sound trial strategy. Because
appellant produced no evidence concerning trial counsel=s reasons for
choosing the course he did, his fifth issue is overruled.

Inaudible Portions of Taped Statement








In his sixth and final issue, appellant
argues the trial court erred when it admitted a taped statement of appellant.[10]  At trial, appellant attempted to exclude the
tape because: (1) it contained many inaudible portions, apparently as a result
of appellant=s heavy accent; (2) the investigator=s responses to
appellant=s inaudible answers are the most clear
statements; (3) the State should have reduced the tape to a transcript before
trial;[11]
and (4) the quality of the recording was so poor that it could not be
represented as an accurate representation of what took place.[12]


The admissibility of evidence is within
the trial court=s discretion.  Bingham, 987 S.W.2d at 57.  The trial court abuses its discretion if it
acts without reference to any guiding rules or principles.  Montgomery, 810 S.W.2d at 380.  The taped statements were properly
authenticated under Texas Rule of Evidence 901. 
The detective participating in the taped conversation testified he was
the operator of the recording equipment, it was functioning properly, and that
the recording accurately reflected the conversation.  See Tex.
R. Evid. 901.  The taped
statements are relevant because they contain appellant=s version of the
events.  Evidence is relevant if it has
any tendency to make a fact of consequence more probable or less probable than
it would be without the evidence.  Tex. R. Evid. 401.  We conclude the trial court did not abuse its
discretion.  Appellant=s sixth issue is
overruled.  

We affirm the judgment of the trial
court.          

 

/s/      John S. Anderson

Justice

 

Judgment
rendered and Opinion filed January 13, 2005.

Panel
consists of Justices Anderson, Hudson, and Frost.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  The
complainant was shot at close range in the back of the head with a .38 caliber
handgun, the same caliber as the silver handgun.  





[2]  Investigators
recovered a plastic container of brake fluid in appellant=s car.  





[3]  Appellant said
they planned to set up phony drug deals with two Hispanic men from New York by
saying they had 100 kilos of cocaine. 
When the men came, they were going to rob them of all their money. 





[4]   The Bloods= colors are red and the Crips= are blue. 





[5]  Kent responded
by saying that at the beginning, her story was different because she was afraid
appellant would kill her and her brother. 





[6]  Our evaluation
should not intrude upon the fact-finder=s role
as the sole judge of the weight and credibility of the evidence.  Cain v. State, 958 S.W.2d 404, 407
(Tex. Crim. App. 1997).  Moreover, A[a] decision is not manifestly unjust merely because
the jury resolved conflicting views of the evidence in favor of the State.@  Id.





[7]  Article 38.23
provides that A[n]o evidence obtained by an officer or other person
in violation of any provisions of the Constitution or laws of the State of
Texas, or of the Constitution or laws of the United States of America, shall be
admitted in evidence against the accused on the trial of any criminal case.@  Tex. Code Crim. Proc. Ann. Art. 38.23
(Vernon Supp. 2004)





[8]   Generally, to
establish the predicate for a document=s
admissibility as a record of a regularly conducted business activity, the
proponent must establish: (1) the record was made and kept in the course of a
regularly conducted business activity; (2) it was the regular practice of that
business activity to make the record; (3) the record was made at or near the
time of the event being recorded; and (4) the person making the record or
submitting the information had personal knowledge of the events being recorded.  Tex.
R. Evid. 803(6).





[9]  The top
portion of the registration card consists of identifying information about the
guest, and the bottom portion has the date, daily charge rate of the room, tax,
and total charge.  All of the blanks were
filled in.  





[10]  As with his
third issue, in briefing his sixth issue appellant fails to cite any relevant
authority or apply such relevant authority to the specific facts of this
case.  See Tex. R. App. P. 38.1(h);
Rhoades, 934 S.W.2d at 119; King, 17 S.W.3d at 23.  Accordingly, appellant=s argument on appeal is waived.      





[11]  Appellant had
a copy of the tapes a year prior to trial without requesting
transcription.   





[12]  The trial
court, out of the presence of the jury, listened to a portion of the tape and
determined there was nothing wrong with the tape=s
quality, or with the recording equipment or operator.  The only problem was understanding appellant
because of his accent.  See Tex. Code Crim. Proc. Ann. Art. 38.22, ' 3(a)(3) (Vernon Supp. 2004).