

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-11-00922-CR

Joseph J. **HANNA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2010CR3427A
Honorable Raymond Angelini, Judge Presiding

Opinion by:   Catherine Stone, Chief Justice

Sitting:      Catherine Stone, Chief Justice
              Sandee Bryan Marion, Justice
              Rebeca C. Martinez, Justice

Delivered and Filed:  January 30, 2013

AFFIRMED

Joseph J. Hanna challenges the sufficiency of the evidence to support his convictions of theft of property and misapplication of fiduciary property. We affirm the trial court's judgment.

### PROCEDURAL BACKGROUND AND TRIAL TESTIMONY

Hanna's indictment for theft of property alleges that he unlawfully appropriated currency with an aggregate value of $20,000 or more but less than $100,000 without the effective consent of its owner, Massoud Khalilzadeh, and all amounts alleged were pursuant to one scheme or continuing course of conduct. Hanna's indictment for misapplication of fiduciary property

alleges that he intentionally or knowingly misapplied currency with an aggregate value of $20,000 or more but less than $100,000, that he held as a person acting in a fiduciary capacity, contrary to an agreement under which he held said property and in a manner that involved substantial risk of loss of the property to Khalilzadeh, and all amounts alleged were pursuant to one scheme or continuing course of conduct. Hanna pled not guilty to the charges.

The first witnesses to testify for the State were custodians of record through which numerous documents were admitted into evidence. Additional documents were admitted into evidence through business records affidavits.

Jay Neumann, a criminal investigator with the Bexar County District Attorney's Office, was the next witness called by the State to testify. Mr. Neumann first met with Khalilzadeh in 2007, after he filed a complaint with the district attorney's office about a check. Mr. Neumann identified the check about which Khalilzadeh had filed the complaint which was dated June 12, 2007, in the amount of $22,000, and drawn on an account in Hanna's name.

Mr. Neumann then identified the records from an account at Laredo National Bank held by USA House Invest LLC for which Hanna and David Allen Howell were signatories. That account was opened on February 26, 2007. Mr. Neumann identified two wire transfers that came into the account on April 23, 2007, and May 2, 2007, each in the amount of $15,000. Mr. Neumann testified that prior to the wire transfers being deposited the account had an excessive amount of insufficient fund fees. After the first $15,000 wire transfer, the following checks were written: (1) a check payable to Hanna in the amount of $7,000; (2) a check payable to Howell in the amount of $1,000; and (3) a check payable to cash in the amount of $5,000. After the second wire transfer, a wire transfer in the amount of $1,000 was made to Howell's personal account, and two wire transfers in the amounts of $8,000 and $800, respectively, were made to Hanna's

personal account. Finally, Howell withdrew $5,005 in cash. Mr. Neumann testified that none of the checks or transfers from the account was for the purchase of property.

Mr. Neumann also identified the records from Hanna's account with Laredo National Bank which was opened on February 21, 2007. The records reflect the $7,000 credit from the check deposited from the USA House Invest account and subsequent debits to a furniture store, Top Karaoke, Time Warner, multiple debits to Wal-Mart, Exxon, and various restaurants, and multiple insufficient fund charges. The records also reflect the $8,000 transferred from the USA House Invest account and various debits to restaurants and insufficient fund charges until the account ended with an overdrawn balance.

On cross-examination, Mr. Neumann acknowledged that two $15,000 wire transfers were deposited into an account in the name of USA House Invest and that Howell signed the checks from the account. In response to whether Howell was the sole member of USA House Invest, Mr. Neumann responded that he was uncertain but both Hanna and Howell were signatories on the account, and Hanna signed the wire transfer to his account in the amount of $800.

Khalilzadeh was the next witness called to testify. He was born in Iran in 1938, and arrived in the United States in 1961. In 2007, Khalilzadeh had some money to invest and saw an ad for a $10,000 investment in a bar and grill. The second or third time Khalilzadeh met with a lady regarding the investment, he was introduced to Hanna, Howell, and a few other people. Based on the discussions at that meeting, Khalilzadeh believed Hanna was an experienced real estate person and specialized in "flip-over houses, buy it small and sell it." After being introduced to Hanna, Khalilzadeh called him and asked his opinion about the bar and grill investment. Hanna told Khalilzadeh there may be better investments.

Hanna subsequently told Khalilzadeh that he had a deal to buy a piece of property for which he already had a buyer lined up to whom the property could be sold for a profit in 69 days.

Hanna represented that the profit would be split 50-50, but he needed $30,000 as a down payment for the property to get the deal going. Khalilzadeh testified that he agreed to give Hanna the $30,000 to use for the down payment, and he sent two wire transfers based on Hanna's instructions. Hanna told Khalilzadeh that Howell was Hanna's business manager and partner, but that Hanna was the boss.

In connection with this deal, Khalilzadeh was given a real estate lien note and deed of trust which were supposed to protect his investment. The maker of the note is USA House Invest, LLC. Khalilzadeh explained that the note was intended as a safety precaution in case the land deal did not go through.

While the first deal was pending, Hanna called Khalilzadeh for another meeting with himself, Howell, and a third individual who was a mechanic. Hanna proposed that they open a car dealership to buy used cars which the mechanic would fix to be resold. Hanna also proposed that Khalilzadeh would manage the car lot. Hanna represented that he had a $100,000 line of credit with a bank that could be used to purchase the used cars. Hanna told Khalilzadeh that he needed $5,000 to start the paperwork, which Khalilzadeh paid him in cash. Khalilzadeh agreed that he received a 1/3 interest in a business named Leosag, Incorporated, in relation to this deal.

Hanna then approached Khalilzadeh regarding a third investment in a deal with some of Hanna's investor friends in California. Hanna represented that the project involved flipping houses, and the project was almost done. Hanna told Khalilzadeh if they invested in the project, they would make a profit within a few days since it was almost finished. Khalilzadeh gave Hanna $20,000 for the project. Khalilzadeh decided to fly with Hanna to California to visit friends while Hanna completed the deal. Although Khalilzadeh and Hanna were supposed to re-connect to return to San Antonio together, Khalilzadeh was unable to reach Hanna until after he returned to San Antonio. Hanna informed Khalilzadeh that the California deal was delayed due

to an unexpected happening. On June 12, 2007, Hanna gave Khalilzadeh a check in the amount of $22,000, to cover his $20,000 investment and $2,000 in profit. When Khalilzadeh attempted to cash the check, however, the account had insufficient funds. At that time, Khalilzadeh filed a complaint with the district attorney's office and met with Mr. Neumann.

On cross-examination, Khalilzadeh admitted that Hanna gave him a "bunch of documentation" with regard to the $20,000 investment. Khalilzadeh stated that Hanna gave him a promissory note at the same time he gave him the $22,000 check. Khalilzadeh admitted that the promissory note stated that the funds could be used by Hanna in any manner and did not mention the California deal. Khalilzadeh also admitted that Hanna had paid him $19,000 as of the date of trial; however, no agreement was reached as to which money was being repaid.

Santa Cecilia Mendoza testified that she received two $5,000 cashier's checks from Hanna. The first was dated April 23, 2007, and the second was dated May 2, 2007. The checks were for money that Hanna owed to her. Both checks show the remitter as USA House Invest, LLC.

Bill Williamson, a real estate broker, owned a property on Medina Base Road. In 2007, he entered into a contract to sell the property to SA House Invest; however, the buyer's name was subsequently changed to USA House Invest, LLC. Although the amount USA House Invest was required to pay as a down payment was reduced from $22,000 to $11,000, the sale was not closed because USA House Invest could not fund the down payment on the May 11, 2007 closing date. Williamson understood that SA House Invest was owned by Hanna based on his conversations with Al Voss, who was the agent representing the buyer. Hanna subsequently filed a complaint against Voss in connection with the transaction, alleging he was representing a second buyer at the same time he was representing USA House Invest. Williamson testified,

however, that the closing documents were signed and the reason the transaction did not close was because USA House Invest could not fund the down payment.

Karin Brown was the title company's escrow agent on the Medina Base Road transaction. Although the contract initially listed SA House Invest as the buyer and was signed by Hanna, the contract was amended to list USA House Invest as the buyer, and Howell signed the closing documents. Brown testified that the transaction did not close because USA House Invest never brought the money for the amount they were required to pay at closing.

## STANDARD OF REVIEW

In appeals in criminal cases, the only standard an appellate court applies in reviewing sufficiency challenges is the *Jackson v. Virginia* legal sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under that standard, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). As a reviewing court, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id.*

## THEFT OF PROPERTY

A person commits the offense of theft if he unlawfully appropriates property with the intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2012). Appropriation is unlawful if it is without the owner's effective consent. *Id.* at § 31.03(b)(1). Consent is not effective if induced by deception or coercion. *Id.* at § 31.01(3)(A). Deception includes "creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true." *Id.* at § 31.01(1)(A).

From the arguments made in Hanna's brief, he appears to challenge the sufficiency of the evidence to establish the absence of Khalilzadeh's consent because Khalildazeh voluntarily paid the funds in question. Hanna also appears to argue that he was not involved in any deception because Howell signed the checks and authorized the wire transfers from USA House Invest's account.

In this case, the testimony established that Khalilzadeh wire transferred $30,000 to be used as a down payment in a real estate transaction based on representations made to him by Hanna that the property could be purchased and resold to another buyer in 69 days for a profit. The funds were deposited into an account owned by USA House Invest, which was the purchaser identified in closing documents for the property owned by Williamson. Those documents reflected, however, that the down payment for the property was only $11,000, reduced from $22,000. Moreover, immediately upon the funds being deposited into the USA House Invest account, over $15,000 of the funds were transferred to Hanna's personal bank account and used for various personal expenditures. The sale of the property failed to close because USA House Invest failed to pay the down payment.

This transaction alone is sufficient to support Hanna's conviction of theft of property because the evidence established that Hanna created a false impression that Khalilzadeh's $30,000 would be used to purchase property to be resold in 69 days, while Hanna immediately used approximately one-half of the funds for his own personal benefit instead of purchasing the property in question. Although Howell may have physically authorized the transfers, the jury could infer that Hanna knew the source of the funds deposited into his account and thereby also approved of the transfers. From the evidence, the jury could believe that Hanna never intended to use the $30,000 he obtained from Khalilzadeh to purchase property and instead created a false impression of his intent in order to obtain Khalilzadeh's money. Thus, the jury could find that

- 7 -

Hanna's representation regarding the intended use of the funds was "merely a ruse to accomplish theft by deception." *King v. State*, 17 S.W.3d 7, 15 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

## MISAPPLICATION OF FIDUCIARY PROPERTY

A person commits the offense of misapplication of fiduciary property if the person intentionally or knowingly misapplies property he holds as a fiduciary in a manner that involves substantial risk of loss to the owner of the property.[1] TEX. PENAL CODE ANN. § 32.45(b) (West 2011). A "fiduciary" includes any person acting in a fiduciary capacity. *Id*. at § 32.45(a)(1)(C). "Misapply" means dealing with property contrary to an agreement under which the fiduciary holds the property. *Id*. at § 32.45(a)(2)(A).

With regard to this offense, Hanna argues in his brief that he was not acting in a fiduciary capacity because Khalilzadeh's funds were transferred to an account owned by USA House Invest, and Howell was the sole member of that entity. Hanna argues that Howell controlled the account and dispersed the funds.

This court has previously held that the term "fiduciary" "has a common or plain meaning." *Gonzalez v. State*, 954 S.W.2d 98, 103 (Tex. App.—San Antonio 1997, no pet.). "[A] fiduciary is one in whom another has justifiably reposed confidence to act in a certain manner." *Id*. A fiduciary has "a duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking." *Id*.

This court also has held that the term "fiduciary capacity" "has a plain meaning." *Id*. "'One is said to act in a 'fiduciary capacity' or to receive money or contract a debt in a 'fiduciary capacity,' when the business which he transacts, or the money or property which he handles, is

---

[1] A person also can commit the offense by acting recklessly; however, the indictment in this case limited the culpable mental states to intentional or knowing.

not his or for his own benefit, but for the benefit of another person as to whom he stands in relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part.'" *Id.* (quoting Black's Law Dictionary 625 (6th ed. 1990)). Consistent with this definition, the jury charge stated, "An individual acts in a fiduciary capacity when he receives money, contracts a debt, or handles property not belonging to him, not for his benefit, but for another person's benefit. The transaction is conducted for the benefit of another person to whom the actor stands in a relation implying and necessitating great confidence and trust and a high degree of good faith."

In this case, the evidence established that Khalilzadeh wire transferred the $30,000 according to the instructions given to him by Hanna. Based on Hanna's representations, the jury could infer that Khalilzadeh justifiably reposed confidence in Hanna by following his wire transfer instructions. Thus, in providing the wire transfer instructions, Hanna was handling money that Khalilzadeh entrusted to him and represented that the money would be used for Khalilzadeh's benefit. This evidence is sufficient to support the jury's finding that Hanna was acting in a fiduciary capacity.

Moreover, although Howell directly authorized most of the transfers from the USA House Invest account, the evidence established that half of the funds were deposited into Hanna's personal account, and one of the transfers was directly authorized by Hanna. From this evidence, the jury could find that Hanna misapplied the property contrary to his agreement with Khalilzadeh to use the funds to purchase property. *See id.* at 104 (noting agreement not required to be in writing).

## CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH