

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00032-CR

KEVEN YOUNG                                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. F-2011-0122-D

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

In a single point, Appellant Keven Young challenges the sufficiency of the evidence to support his conviction for murder.[2]  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]In the Summary of the Argument section of his brief, Appellant alleges ineffective assistance of counsel.  Appellant did not raise this argument as a separate point or provide us with any argument with citations to the record and to

## Background

Ebony Chandler and Appellant had an off-and-on relationship between 2004 and 2008 that produced two of Ebony's four children. There was no court order addressing custody; whenever Appellant wanted to see his children he usually picked them up at Ebony's house, where she and the children lived with her sister, LaShondra. Ebony was on her way to watch her cousin play football one morning when Appellant called about picking up his kids. She told him that she would call him back later that afternoon around 3:00 p.m.

Desmond Poe, his fiancée Tashanna Darby, and her nine-year-old son also went to the football field that day because Tashanna's son had a game in the morning, and they usually made a day of it, watching the other games. Tashanna, who was pregnant, went home early. Ebony knew Desmond as a friend of her aunt's boyfriend. When she ran into Desmond at the game, they exchanged pleasantries and telephone numbers. After they parted that day, Desmond called her a couple of times, asking to see her, and she agreed.

Desmond took Tashanna's son home a couple of hours after she left. As Tashanna helped her son clean up, Desmond told her that he was going out to shoot pool. Desmond arrived at Ebony's home around 9:30 p.m. and helped her

---

legal authority to support it. *See* Tex. R. App. P. 38.1(f), (i). Conclusory statements unsupported by argument or citation to legal authority present nothing for this court to review. *See King v. State*, 17 S.W.3d 7, 23 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Thus, we only address Appellant's complaint regarding the sufficiency of the evidence.

with some household chores before they retired to the garage to visit and to drink alcohol. Desmond also smoked marihuana.

Appellant called Ebony at 10:51 p.m. and again at 10:59 p.m. She ignored the calls, but after noticing that her cell phone needed charging, she plugged it into her van, which was parked outside the garage. About five minutes later, Ebony saw Appellant's truck pass through the alley behind her garage, turn around in a neighbor's driveway, and park in the alley facing Ebony's garage door. He climbed out, approached her and Desmond, and asked why she had not answered his calls. Ebony replied that he was supposed to have been there earlier that afternoon and that it was now too late. Appellant insulted her and Desmond. Desmond asked Appellant to leave him out of anything between Appellant and Ebony.

Ebony warned Appellant that she would call the police if he did not leave. Appellant lifted his shirt, revealing a handgun. Ebony grabbed Desmond and urged him to go inside. When he refused, she positioned herself between the two men and called for her sister's help.

LaShondra had been asleep in her room and initially ignored Ebony's calls for help. As they continued, however, she roused herself, went to the garage, took hold of Appellant, and tried to reason with him. Ebony convinced Desmond to go inside the house. LaShondra tried telling Appellant that he could talk to Ebony later and that his children were awake inside the house.

3

Because Ebony did not have a landline in her house and her cell phone was charging in her van, she asked Desmond if she could use his cell phone to call the police. He refused and said that he was going home and that Ebony needed to work out her problems with Appellant. Ebony pleaded with Desmond not to go outside because Appellant had a gun. He replied that he was not afraid, and he moved Ebony out of the way and walked toward the garage where he had parked his car.

LaShondra had just convinced Appellant to leave as Desmond stepped into the garage and called him a derogatory name. Appellant told her to move, and she bent down behind her truck, which was also parked in the garage, and covered her ears. Ebony saw Appellant raise his hand with a gun as Desmond walked toward the garage. Then, her six-year-old called her name. She turned and pulled the child back into the house as she heard a gunshot. From behind her truck, LaShondra also heard the gunshot.

As Appellant walked past LaShondra towards his own truck, he told her to tell Ebony "to love that n****r now." When he reached his truck, he climbed in and left. Ebony closed and locked the door from the house to the garage and ordered her children to their rooms. LaShondra saw Desmond lying dead in the garage, knocked on the locked door to the house, and asked Ebony to let her in.

A few minutes later, Ebony entered the garage, walked past Desmond's body, and fetched her cell phone from her van. She then closed the garage door and went back into the house. She called 911 sometime around 11:30 p.m.

4

and reported that her children's father had come over and shot a man named Desmond in her garage and that Desmond was dead.

After police officers arrived, Ebony, LaShondra, and the children waited outside while the officers searched the home and found Desmond in the garage, "clearly dead." No weapon was found. Officers transported Ebony and LaShondra to the police station, where they each provided a statement. Ebony's cell phone had received a text message from Appellant's phone at 11:32 p.m. that stated, "U so fake but ok, u wanna go 2 war lets war. U and him will lose, bet that."

Deanica Brown and Appellant had dated for three to four months before the shooting. She was scheduled to work at Applebee's that day. Appellant had dropped her off at work and promised to pick her up at around 11:30 p.m. to midnight when her shift ended. Appellant did not pick up her up that night and did not answer her calls. Later that night, he called her and said, "I'm sorry; I'm sorry; I love you; I'm sorry."

Officers located Appellant's truck in the early morning hours but did not recover any firearms or shell casings. The bullet that killed Desmond was found embedded in a garage wall and was recovered. Based on the firearms examiner's determination, the bullet had been fired from a revolver, which would have retained the shell casing, rather than discharging it from the weapon. The medical examiner found that the cause of Desmond's death was a gunshot wound to the head and that the manner of death was homicide. A jury found

Appellant guilty of murder and assessed a life sentence. The trial court sentenced Appellant accordingly.

## Sufficiency of the Evidence

Appellant contends that the evidence is insufficient to prove that he was guilty of murder. Specifically, he claims that the State's evidence is speculative because the investigating officers failed to conduct a thorough investigation of the murder scene, investigate all possible suspects, test Appellant's vehicle for gunshot residue, investigate Appellant's phone records, or address contradictions between the sisters' testimony.

In our due process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. Thus, when performing an evidentiary sufficiency review, we

may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Winfrey*, 393 S.W.3d at 771; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

A person commits murder when he (1) intentionally or knowingly causes the death of an individual or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1), (2) (West 2011). A person acts intentionally when he has a conscious desire to cause the result of his conduct. *Id.* § 6.03(a). A person acts knowingly when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). A person's knowledge and intent may be inferred from his "acts, words, and conduct." *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *see Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

The State introduced evidence that Desmond was found dead, lying face down on the floor of Ebony's garage from a single gunshot wound to the left side of his head. Ebony testified that Appellant was upset when he arrived at her home, insulted Desmond after seeing him at her house, and flashed a gun after she warned him that she would call the police if he did not leave. LaShondra testified that she saw Appellant at the house that evening, witnessed him putting his hand on his shirt when Desmond walked out into the garage and exchanged words with him, and was outside and took cover when Appellant told her to move before Desmond was shot. Both women testified that they heard one gunshot, and LaShondra testified that as Appellant was leaving, he told her to tell Ebony "to love that n****r now."

In addition to the sisters' testimony, Appellant's girlfriend testified that after he failed to pick her up from work that evening, he called her and said, "I'm sorry; I'm sorry; I love you; I'm sorry." Also, Appellant's childhood friend testified that he knew Appellant owned a gun and had seen him with a gun before.

Viewing the evidence in the light most favorable to the verdict, we presume that the jury resolved any conflicts in the sisters' testimony and hold that a rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. Accordingly, we overrule Appellant's sole point. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

**Conclusion**

8

Having overruled Appellant's sole point, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 29, 2014